COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick,[*] Judge Elder and
         Senior Judge Duff
Argued in Alexandria, Virginia


WILLIAM von RAAB
                                              OPINION BY
v.      Record No. 0669-97-4        JUDGE LARRY G. ELDER
                                       DECEMBER 23, 1997
SUSAN von RAAB


           FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                       Alfred D. Swersky, Judge

           Daniel G. Dannenbaum (Glenn C. Lewis; Leslie
           Weber Hoffman; Wendy H. Schwartz; The Lewis
           Law Firm, on briefs), for appellant.

           Richard C. Shadyac, Jr. (Alane A. Peragallo;
           Shadyac & Shadyac, P.C., on brief), for
           appellee.


     William von Raab (husband) appeals the trial court's award

of equitable distribution in his divorce from Susan von Raab

(wife).  He contends the trial court erred when it classified the

marital home (Prince Street property) as wholly "marital" and

declined to award him his pre-marital equity in the property.

For the reasons that follow, we affirm.[1]

_____

[*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

[1]Husband also argued that the trial court's award of
equitable distribution was erroneous on other grounds.  He
challenged the trial court's decisions regarding the
classification and distribution of a farm property in Madison
County, the apportionment of the marital debts, and the
classification and distribution of wife's retirement accounts.
We affirmed the trial court's decisions on these issues in an
unpublished memorandum opinion released simultaneously with this
opinion.

## FACTS

The parties were married in October 1979, had one child in October 1989, separated in November 1994, and divorced in 1996. The Prince Street property served as the parties' primary marital residence from 1980 until their separation. The property was purchased by husband with his first wife in 1972 for $62,500. As an incident of his divorce from his first wife in 1979, husband purchased her interest in the property, and the property was retitled exclusively in his name. At the time of husband's marriage to wife in 1979, the value of the Prince Street property was $185,000. The principal due on the mortgage secured by the property was $70,000, and husband's equity in the property was $115,000.

In 1990, Fred Karam, a businessman and former client of husband, asked husband to lend him $150,000 for ninety days so that he could pay the current debts of his cash-strapped business. Because husband believed that Karam was "reliable" and because it was "the thing that friends do for friends," husband decided to "bail him out" of his business problems. Husband used the equity in the Prince Street property to borrow $150,000 from Burke & Herbert Bank for a term of ninety days. Husband gave the bank a ninety-day note for $150,000 that was secured by a second deed of trust on the Prince Street property. Husband then lent this money to Karam in exchange for a promissory note. When

Karam did not repay the loan from husband within ninety days as promised, husband refinanced his loan from the bank by "rolling it over" into a continuing series of ninety-day notes. In 1993, the bank refused to extend husband's ninety-day note and insisted that he obtain "permanent financing" for the debt. At the time, husband's annual income was $8,291, while wife's was $61,603. Husband and wife agreed to refinance husband's existing mortgage on the Prince Street property with a jointly-obtained mortgage that would cover husband's debt to Burke & Herbert. The Prince Street property was retitled to husband and wife as tenants by the entirety as part of the refinancing transaction. The record established that Karam has yet to fully repay husband and still owes him between $110,000 and $112,000.

Both husband and wife testified about wife's monetary and non-monetary contributions to the Prince Street property. Wife testified that she was responsible for most of the maintenance of the property, including hiring a maid to clean the premises. Wife also played a substantial role in the ongoing renovation of the interior and exterior of the property. Wife testified that she assisted in the payment of the mortgage and utility bills for the Prince Street property by contributing her paycheck to the joint checking account that was used to pay these obligations. The renovations to the property were also paid for with funds drawn from this joint checking account. Wife also paid for several expenses associated with the property with funds from her

3

personal checking account, including utility bills, real estate taxes, the maid, and renovation of the kitchen. Husband testified that wife contributed her salary into the parties' joint checking account, "which [was] then disbursed over a full range of matters." Husband also testified that wife managed both the redesign of the kitchen and the replastering and painting of their son's room and procured one set of curtains.

After the parties separated in November 1994, husband made all mortgage payments and paid all expenses associated with maintaining the Prince Street property. Husband's post-separation mortgage payments totaled $47,000 and increased the equity in the property by $3,666. Husband also retained exclusive use of the property after the parties separated.

On the date of the equitable distribution hearing, the value of the Prince Street property was $355,000, the principal due on the mortgage was $250,315, and the equity in the property was $104,685.

The trial court classified the Prince Street property as marital property and awarded wife one-half of the equity in the property. The trial court found that husband acquired the property before the marriage and that the equity in the property at the time of the marriage was $115,000. However, the trial court concluded that the Prince Street property had been transmuted from husband's separate property into marital property by "the monetary and non-monetary contributions of [wife]

4

together with the refinancing and the conveyance by [husband] to husband and wife as tenants by the entiret[y]."  Regarding the loan to Karam in 1990 and the subsequent refinancing of the property's mortgage in 1993, the trial court found:

> The evidence is . . . clear that [husband] put this marital asset at risk when he made the loan to Karam.  This ultimately required the equity in Prince Street be used to secure his loan made to obtain funds to lend to Karam.  While [wife] may have dealt with the administration of the Karam loan, there is no evidence she was consulted beforehand nor acquiesced in the loan.  She had little or no choice but to join in the refinancing.

The trial court did not award husband any credit for his pre-marital equity in the property or his post-separation reduction in the principal of the mortgage.  The trial court also valued the Karam note "at between $110,000.00 and $112,000.00" and classified it as husband's separate property.

## II.

### CLASSIFICATION OF THE PRINCE STREET PROPERTY

Husband contends the trial court erred when it failed to classify the Prince Street property as part marital and part separate and award him a credit for his pre-marital equity in the property.  He also contends the trial court erred when it declined to award him a credit for his post-separation contributions to the property.  We disagree.

### A.

Code § 20-107.3, which governs awards of equitable distribution, "is intended to recognize a marriage as a

5

partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse." Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987). "Where an equitable distribution is appropriate, then all of the provisions of Code § 20-107.3 must be followed." Artis v. Artis, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987). The court must determine "the legal title as between the parties" and "the ownership and value" of all of the parties' property and then classify this property as "marital," "separate," or "part separate and part marital." Code § 20-107.3(A). After this is done, the court may (1) order the division or transfer, or both, of jointly owned marital property, (2) apportion and order the payment of marital debts, or (3) grant a monetary award to either party. See Code § 20-107.3(C), (D). The court must determine the amount of its award of any of these remedies "upon the factors listed in [Code § 20-107.3(E)]." Code § 20-107.3(C), (D). Subject to these enumerated statutory factors, "this division or transfer of jointly owned marital property, [the apportionment of marital debts,] and the amount of any monetary award, is within the sound discretion of the trial court." Dietz v. Dietz, 17 Va. App. 203, 216, 436 S.E.2d 463, 471 (1993).

On appeal, the trial court's award of equitable distribution will not be reversed "unless it appears from the record that the chancellor has abused his discretion, that he has not considered

or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities."  Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990) (citations omitted).

## B.

We hold that the trial court's classification of the Prince Street property as marital property was not erroneous.  Because husband acquired the Prince Street property prior to October 1979, it was husband's separate property at the beginning of the parties' marriage.  However, depending on how property is utilized during the marriage, property that was at one time "separate" can be converted into either "marital" property or "part marital property and part separate property" for the purposes of equitable distribution.  See McDavid v. McDavid, 19 Va. App. 406, 410-11, 451 S.E.2d 713, 716 (1994) (citations omitted).  Code § 20-107.3(A)(1) states how the increase in value of separate property during the marriage may be classified as marital property.

> The increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions.  The personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attributable thereto is to be considered marital property.

7

In addition, Code § 20-107.3(A)(3) sets forth the means by which property may be "transmuted" into a different class. Of particular relevance to the classification of the Prince Street property in this case is Code § 20-107.3(A)(3)(f), which states:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by the preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

Applying these code sections to the facts of this case, we conclude that the entirety of husband's separate interest in the Prince Street property was transmuted to marital property during the parties' marriage. The value of the Prince Street property increased from $185,000 at the beginning of the marriage to $355,000 on the date of the hearing. The record established that, during the marriage, wife made significant monetary and non-monetary contributions to the maintenance and renovation of the property. The increase in value of the Prince Street property that occurred prior to the retitling of the property that was attributable to these contributions was marital property. See Code § 20-107.3(A)(1). Furthermore, all of husband's separate interest in the Prince Street property was transmuted to marital property when husband retitled the property to himself and wife as part of the transaction to obtain permanent financing for the money he borrowed from Burke & Herbert Bank and lent to Fred Karam. See Code

8

§ 20-107.3(A)(3)(f).

Because husband's separate interest in the Prince Street property was transmuted into marital property, the correctness of the trial court's classification of the property as wholly marital hinges upon whether husband's separate interest was both "retraceable" and "not a gift." Id. Although our prior cases address how to determine whether a particular retitling of separate property in the joint names of the parties is "not a gift,"[2] we have heretofore said little about how separate property is traced back from property that has been transmuted during the marriage. See Rowe v. Rowe, 24 Va. App. 123, 136, 480 S.E.2d 760, 766 (1997) (holding that evidence was sufficient to retrace property claimed by husband as separate).

The goal of the tracing process is to link a transmuted asset to its primary source, which is either separate property or marital property. See Brett R. Turner, Equitable Distribution of Property § 5.23 (2d ed. 1994). Whether a transmutted asset can be traced back to a separate property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of the transmutation. Because all property acquired by either spouse during the marriage and before the last separation of the parties is

_____

[2]See Rowe v. Rowe, 24 Va. App. 123, 136-37, 480 S.E.2d 760, 766 (1997); Lightburn v. Lightburn, 22 Va. App. 612, 616-17, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

presumed to be marital property, see Code § 20-107.3(A)(2), the party claiming a separate interest in transmuted property bears the burden of proving retraceability. See id. If the party claiming the separate interest in transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a "gift." Lightburn v. Lightburn, 22 Va. App. 612, 617, 472 S.E.2d 281, 283 (1996) (citing Turner, supra, § 5.18); see also Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996).

We hold that, in the aftermath of the two-step, tripartite transaction to lend Karam $150,000, husband's initial separate interest in the equity of the Prince Street property was no longer retraceable from the current joint title to the property held by husband and wife. Husband's equity in the Prince Street property on the date of the marriage was $115,000. The record indicates that husband leveraged his equity in the Prince Street property to borrow $150,000 from Burke & Herbert which he subsequently lent to Karam in exchange for an unsecured note. When Karam failed to repay the loan, wife assumed joint liability for the amount of money husband borrowed from Burke & Herbert. Wife assumed liability for this debt to ensure that the bank would not foreclose on what was both husband's "separate" property and the marital home. The combination of husband's initial leverage of his separate interest in the Prince Street

10

property and wife's intervention to secure the parties' uninterrupted possession of the marital home effectively severed any link between husband's prior separate interest and the transmuted marital property. If husband's initial interest in the Prince Street property is retraceable at all, it can be traced back from the Karam note, which the trial court found to be husband's separate property. Because husband's separate interest in the Prince Street property was no longer retraceable from anything other than the Karam note, the trial court did not err when it classified the entire property as "marital."

### C.

We also hold that the trial court did not abuse its discretion when it refused to award husband a credit for his post-separation payments that increased the equity in the marital property by $3,666. The trial court's award indicated that it considered husband's "direct monetary contributions" to the Prince Street property. The record also established that husband retained exclusive use of the property after the parties separated. Although the separate contribution of one party to the acquisition, care, and maintenance of marital property is a factor that the trial court must consider when making its award of equitable distribution, Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions. See Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989). Furthermore, no evidence

11

established that husband's source of funds for making the post-separation mortgage payments on the Prince Street property was actually his separate property.  In light of the trial court's analysis, we cannot say that its refusal to award husband a credit for his post-separation contributions to the Prince Street property was an abuse of discretion.

For the foregoing reasons, we affirm the trial court's award of equitable distribution regarding the Prince Street property.

<u>Affirmed</u>.

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick,[***] Judge Elder and
         Senior Judge Duff
Argued at Alexandria, Virginia


WILLIAM von RAAB

                                    MEMORANDUM OPINION[****] BY
v.        Record No. 0669-97-4       JUDGE LARRY G. ELDER
                                        DECEMBER 23, 1997
SUSAN von RAAB


          FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                      Alfred D. Swersky, Judge

          Daniel G. Dannenbaum (Glenn C. Lewis; Leslie
          Weber Hoffman; Wendy H. Schwartz; The Lewis
          Law Firm, on briefs), for appellant.

          Richard C. Shadyac, Jr. (Alane A. Peragallo;
          Shadyac & Shadyac, P.C., on brief), for
          appellee.


     William von Raab (husband) appeals the trial court's award

of equitable distribution in his divorce from Susan von Raab

(wife). He challenges the trial court's award regarding three

separate subject matters. First, regarding the farm in Madison

County (farm property), husband contends that the trial court

erred when it (1) declined to award him his pre-marital interest

in the property and the subsequent appreciation in the value of

this interest and (2) declined to award him a credit for his

post-separation contributions to the property. Second, regarding

--------

[***]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

[****]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

the marital debt, husband contends that the trial court erred when it (1) apportioned the bulk of the debts to him and (2) declined to award him a credit for his post-separation payments of these debts. Third, regarding wife's retirement accounts, husband contends that the trial court erred when it declined to award him a portion of the marital share of these accounts. For the reasons that follow, we affirm.[3]

Code § 20-107.3, which governs awards of equitable distribution, "is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse." Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987). "Where an equitable distribution is appropriate, then all of the provisions of Code § 20-107.3 must be followed." Artis v. Artis, 4 Va. App. 132, 136, 354 S.E.2d 812, 814 (1987). The court must determine "the legal title as between the parties" and "the ownership and value" of all of the parties' property and then classify this property as "marital," "separate," or "part separate and part marital." Code § 20-107.3(A). After this is done, the court may (1) order the division or transfer, or both, of jointly owned

---

[3]Husband also argued that the trial court's award of equitable distribution was erroneous on another ground. He challenged the trial court's decision regarding the classification and distribution of the marital home (Prince Street property). We affirmed the trial court's award regarding the Prince Street property in a published opinion released simultaneously with this memorandum opinion.

15

marital property, (2) apportion and order the payment of marital debts, or (3) grant a monetary award to either party. See Code § 20-107.3(C), (D). The court must determine the amount of its award of any of these remedies "upon the factors listed in [Code § 20-107.3(E)]." Code § 20-107.3(C), (D). Subject to these enumerated statutory factors, "this division or transfer of jointly owned marital property, [the apportionment of marital debts,] and the amount of any monetary award, is within the sound discretion of the trial court." Dietz v. Dietz, 17 Va. App. 203, 216, 436 S.E.2d 463, 471 (1993).

On appeal, the trial court's award of equitable distribution will not be reversed "unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities." Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990) (citations omitted).

## I.

## FARM PROPERTY

Husband contends that the trial court erred when it (1) declined to award him his pre-marital interest in the farm property and the subsequent appreciation in the value of this interest and (2) declined to award him a credit for his post-separation contributions to the property. We disagree.

16

We hold that the trial court's credits to husband for his contribution of the sixty-eight-acre parcel to the farm property and for his post-separation monetary contribution to the property were not an abuse of discretion.

First, we hold that the trial court did not abuse its discretion when it awarded husband a $45,000 credit for his contribution of the sixty-eight-acre parcel. The trial court's award indicates that it considered husband's contribution of the sixty-eight-acre parcel and awarded him a credit of $45,000, the amount of his downpayment on the property. The trial court subsequently awarded husband sixty percent of the value of the farm property after deducting husband's credits. Its factual finding regarding the value of husband's contribution is supported by credible evidence in the record, and we cannot say that the amount of the credit it awarded to husband was an abuse of discretion. Although applying the "Brandenburg Formula" was one of the approaches available to the trial court when determining husband's credit for his separate contribution to the farm property, Code § 20-107.3 does not currently mandate the use of this formula. As such, the trial court's use of an alternative approach was not an abuse of discretion.

Husband failed to preserve for appeal his argument that the trial court erroneously valued the farm property at $533,000 and that it should have deducted $200,000 from this value due to husband's transfer of the sixty-eight-acre parcel to the parties'

17

son in November 1994. In both his testimony and "attachment 2" to his "schedule A," husband requested the trial court to distribute the farm property based on a value of $533,000, a mortgage balance of $228,655, and an equity value of $304,345. In addition, in his list of exceptions to the trial court's award of equitable distribution, husband did not object to the trial court's description or valuation of the farm property. Because husband failed to object to the trial court's ruling on the value of the farm property, we are barred from considering this issue on appeal. Rule 5A:18.

Finally, we hold that the trial court did not abuse its discretion when it awarded husband a $10,000 credit for his post-separation monetary contributions to the farm property. The record supports the trial court's finding that husband "spent $10,000 for repairs of flood damage." Thus, the only post-expense that was established at the equitable distribution hearing for which husband did not receive a credit was his post-separation payments of the mortgage.

We disagree with husband that the trial court erred when it failed to award him a credit for his post-separation mortgage payments on the farm property. Husband does not contest the trial court's classification of the farm property as marital. Husband incorrectly couches these payments as the post-separation acquisition of separate property. Instead, because the farm property is marital, any post-separation contribution by husband

18

of his separate funds that increased the value of the farm property presents a commingling scenario. Code § 20-107.3(A)(3)(d) states:

> [w]hen marital property and separate property are commingled by contributing one category of property, resulting in the loss of identity of contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

In this case, husband offered no evidence that established the source of the funds he used to make the post-separation payments on the mortgage. Because no evidence proved that husband commingled his separate property with the farm property when he made the payments that increased the farm property's equity, the trial court's refusal to award husband a credit for these payments was both supported by the evidence and not erroneous.

## II.

### MARITAL DEBT

Husband contends that the trial court erred when it (1) apportioned eighty-nine percent of the marital debt to him and (2) declined to award him a credit for his post-separation payments of these debts. We disagree.

We hold that neither the trial court's apportionment of the marital debt nor its refusal to award husband a credit for his post-separation payments was an abuse of discretion.

19

First, we hold that the trial court's apportionment to husband of half of the joint Burke & Herbert loan ($8,500), six of the seven Whitman loans ($31,000), the Slaughter loan ($5,000), and the loans from husband's mother ($45,000) was not an abuse of discretion.  The record indicates that the trial court considered all of the statutory factors when it determined its apportionment of this marital debt.  The trial court found that both parties made contributions to the family and the marital property.  It found that the proceeds from the Whitman loans "were used primarily for the education of [husband's] daughter from a previous marriage."  It also found that husband suffered an unintentional decline in his income that "resulted in the accumulation of significant debt" while at the same time using marital funds to pay expenses stemming from his adulterous affair with Misty Cantey.  All of these findings are supported by evidence in the record.  We find no basis on which to conclude that the trial court's apportionment was an abuse of discretion.

We also hold that the trial court did not err when it declined to award husband a credit for his post-separation payments of the joint loan from Burke & Herbert Bank and the mortgages on the Prince Street property and the farm property. The provisions in Code § 20-107.3 regarding the classification and apportionment of marital debt do not mandate that a party who makes post-separation payments on marital debt be awarded a corresponding credit.  See Code § 20-107.3(C).  Instead, whether

20

to award a credit for post-separation payments of marital debt is one of the tools available to the court when determining an over-all scheme of apportionment.  In arriving at its apportionment of the marital debt, the trial court considered all of the factors enumerated in Code § 20-107.3(E) and its factual findings in this regard were supported by credible evidence.  We cannot say that the trial court abused its discretion when it decided against awarding husband a credit for his post-separation payments of the marital debt.

III.

WIFE'S RETIREMENT ACCOUNTS

Husband contends that the trial court's award regarding wife's retirement accounts was erroneous.  He argues that the trial court failed to consider all of wife's retirement accounts and erroneously classified them as entirely wife's separate property.  We disagree.

Although the trial court's ruling on wife's retirement accounts could have been more clearly worded, it indicates that the trial court considered all three of wife's retirement accounts and analyzed the marital share of these accounts as "marital" property.  First, the trial court's finding that wife's "retirement account" was valued at $40,000 indicates that it considered <u>all</u> three of wife's retirement accounts in its ruling.  "Marital" property includes that portion of a spouse's retirement accounts "acquired . . . during the marriage, and

21

before the last separation of the parties."  Code § 20-107.3(A)(2), (G)(1).  The evidence proved that the <u>combined</u> marital share of wife's thrift savings plan and her Legg Mason IRA was approximately $40,000 ($11,227 + $29,917.74).  No evidence established the value of wife's federal pension.  <u>See</u> <u>Bowers v. Bowers</u>, 4 Va. App. 610, 618, 359 S.E.2d 546, 550 (1987) (stating that the parties have the burden to present sufficient evidence from which the trial court can value their property).  Thus, contrary to husband's argument, the trial court's valuation indicates that it considered all of her accounts.

Furthermore, the trial court's reasoning indicates that it classified the marital share of wife's retirement accounts as marital property.  The trial court stated that its award regarding wife's retirement accounts was "[f]or the reasons stated for assignment of the <u>marital</u> debts."  (Emphasis added).  All of the debts apportioned by the trial court were "marital," and its reasons for its apportionment were based upon consideration of the factors stated in Code § 20-107.3(E).  Despite the trial court's awkward statement that wife's retirement accounts "will be retained by her as her separate property," the trial court's reasoning indicates that it classified and analyzed the marital share of these accounts as "marital" property.

Moreover, the trial court's valuation of the retirement accounts and all of its pertinent factual findings are supported

22

by evidence in the record.  After reviewing the record, we cannot say that the trial court's decision to award the entire martial share of these accounts to wife was an abuse of discretion.

Finally, we note that husband received well over fifty percent of the marital assets from the trial court's award of equitable distribution.  The total value of the marital assets subject to distribution (the equity values of the Prince Street property and the farm property plus wife's retirement accounts) was $407,385.  Of this amount, the trial court awarded husband $264,107, or 64.8%.

For the foregoing reasons, we affirm the trial court's award of equitable distribution.

<u>Affirmed</u>.

23