COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Clements
Argued at Alexandria, Virginia


GREGORY R. BANKS

MEMORANDUM OPINION[*] BY
v.    Record No. 0414-00-4        JUDGE JEAN HARRISON CLEMENTS
                                      JULY 31, 2001
SHARON E. BANKS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

John M. DiJoseph (Ted Kavrukov; Kavrukov &
DiJoseph, L.L.P., on briefs), for appellant.

Edward V. O'Connor, Jr. (Byrd Mische P.C., on
brief), for appellee.


Gregory R. Banks (husband) appeals from the final decree of

divorce entered by the trial court on January 28, 2000.  In that

decree, the trial court made equitable distribution and spousal

support awards to Sharon E. Banks (wife).  On appeal, husband

contends the trial court erred in (1) classifying the business as

marital property, (2) denying him credit for the $50,000 in

separate funds used to purchase stocks in a marital account, (3)

denying him credit for his post-separation mortgage payments on

the marital home, (4) awarding wife $2,600 per month in spousal

support and making the award permanent, and (5) awarding wife

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

attorney's fees.  For the reasons that follow, we affirm the judgment of the trial court.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as necessary to the parties' understanding of the disposition of this appeal.  On appeal, we view the evidence and all reasonable inferences therefrom in the light most favorable to wife, the prevailing party below.  See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

## I.  EQUITABLE DISTRIBUTION

"Fashioning an equitable distribution award lies within the sound discretion of the trial judge and that award will not be set aside unless it is plainly wrong or without evidence to support it."  Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990).  Furthermore, we will not disturb an award "unless it appears from the record that the [trial court] . . . has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the finding of fact underlying resolution of the conflict in the equities." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

A.  Classification of the Business as Marital Property

Husband first contends the trial court erred in ruling that the business, Bio-Prosthetic Orthotic Laboratory, Inc., which was created by husband prior to the marriage, was marital

-

property.  Husband argues that wife's routine, insignificant, non-managerial contributions to the business "did not add to the intrinsic value of [the business]."  According to husband, his "personal, individual artistic skill" was the "essence" of the business.

In fashioning an equitable distribution award, the trial court is required to consider the statutory factors set forth in Code § 20-107.3(E).  See Marion v. Marion, 11 Va. App. 659, 665, 401 S.E.2d 432, 436 (1991).  Code § 20-107.3(E)(1) provides, in pertinent part:

> The increase in value of separate property during the marriage is separate property, unless . . . the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contribution. The personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attributable thereto is to be considered marital property.
>
> *     *     *     *     *     *     *
>
> "Personal effort" of a party shall be deemed labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party.

The trial court found that the business was marital property

> based upon the evidence presented that shortly after the marriage began, the business had a negative value and that, from that time on, both parties worked and

-

> contributed to the building and increasing the value of the business, and that at the time that [wife] began contributing to the business, it otherwise would have fallen apart, and that she performed office work, bookkeeping, and managerial work, and that she made substantial efforts which contributed to the increase and the value of the business over the years.

The evidence amply supports the trial court's finding. The record discloses that the parties were married in 1984. Husband established the business prior to the marriage; however, in 1985, shortly after the birth of their first child, the parties learned during an extended leave of absence by the business' secretary that the bookkeeping and other business records were in "total chaos." The parties also learned at the time, when contacted by the IRS and other creditors, that the business, with few assets of any value, was over $50,000 in debt.

The parties had to take out a personal loan for $50,000 against their house and the business to cover the debt. Moreover, wife, who originally had intended, with husband's consent and encouragement, to be strictly a full-time mother, took over the administration of the business. She set up a home office where she reviewed and organized the business' bookkeeping records. She then devised and implemented a new system to coordinate the business' billing and manufacturing procedures. She also handled the business' banking, managed its payroll and patient billing, and established a list to keep track of the delivery of ordered supplies. She additionally

-

developed new patient forms, maintained and improved the office, initiated and oversaw activities to improve office morale, processed the mail, ordered supplies, met with patients, worked with the business' attorney and accountant, and performed the responsibilities of absent employees.

In 1989, the business, having recovered financially and "really grown," expanded into a new office. Wife set up the new office and continued to supervise the administration of the business. She acted in that capacity until husband fired her in 1998 after she filed for divorce. In the years of wife's service, the business flourished and afforded the parties a sizeable income. Clearly, while husband's talents may have been the "essence" of the business, wife's considerable administrative and organizational skills and efforts salvaged the business when it was in debt and disorder and caused it to increase in value.

We hold, therefore, that the trial court did not err in concluding that the entire value of the business was marital property on the basis that the business had a negative value when wife began contributing to it and wife's significant personal efforts applied directly to the business contributed to the substantial appreciation of the business.

B. Credit for the Sale of Separate Property

Husband next contends the trial court erroneously classified the Paine Webber Resource Management Account as

-

entirely marital property.  He argues that he was entitled to receive as his separate property that percentage of the value of the account corresponding to the $50,000 in his separate funds the parties used, along with marital funds, to purchase the securities in that account.

The trial court found that the entirety of the Paine Webber Resource Management Account was marital property because husband's separate funds were commingled with marital funds and transmuted to marital property and were not retraced by a preponderance of the evidence.

Code § 20-107.3(A)(3)(e) provides that,

> [w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property.  However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

We have explained the requirements of tracing relative to commingled property under Code § 20-107.3(A)(3)(e) as follows:

> In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset.  This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset.

-

Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141

(1997) (citing Code § 20-107.3(A)(d)-(f)).

Hence,

> [i]f . . . separate property is . . .
> contributed to the acquisition of new
> property, . . . and suffers a "loss of
> identity," the commingled separate property
> is transmuted to marital property.  In other
> words, if a party "chooses to commingle
> marital and non-marital funds to the point
> that direct tracing is impossible," the
> claimed separate property loses its separate
> status.  Even if a party can prove that some
> part of an asset is separate, if the court
> cannot determine the separate amount, the
> "unknown amount contributed from the
> separate source transmutes by commingling
> and becomes marital property."

Id. at 208-09, 494 S.E.2d at 141 (citations omitted).  "The

party claiming a separate interest in transmuted property bears

the burden of proving retraceability."  von Raab v. von Raab, 26

Va. App. 239, 248, 494 S.E.2d 156, 160 (1997).

Assuming without deciding that husband's $50,000 from the

sale of the house he purchased prior to the marriage was

separate property, we hold that the trial court did not err in

finding that husband failed to present sufficient evidence to

retrace his separate property.  Viewed in the light most

favorable to wife, the evidence neither directly traced the

claimed separate portion of the hybrid property to a separate

asset nor established the identity of the claimed separate

portion.

-

While it is incontroverted that husband contributed the proceeds of the sale of his separate house to the purchase of $300,000 worth of jointly owned stocks,[1] there is no evidence directly connecting the $50,000 to the purchase of the stocks in the parties' Paine Webber Resource Management Account.  Neither party testified that any of the stocks purchased with the separate $50,000 were in that account.  Nor did either party testify that any, much less all, of the $300,000 worth of stocks purchased by the parties were in that account.  Likewise, the sole exhibit in the record relating to the Paine Webber Resource Management Account, an account statement from December 1999, shows that all of the 12,628 shares of stocks in the account were purchased between the months of March 1996 and October 1997, inclusive, at a total cost of approximately $220,000, not $300,000.  Thus, the record discloses no direct tracing of the claimed separate portion of the commingled assets in the Paine Webber Resource Management Account to husband's separate $50,000.

Furthermore, even if some part of the Paine Webber Resource Management Account were traceable to a separate asset, the identity of the separate part cannot be accurately established. Husband provided no evidence that allowed the trial court to

---

[1] Wife conceded at trial that the proceeds from the sale of the house husband bought prior to the marriage were a part of the $300,000 the parties spent to purchase stocks.

identify that portion of the account that corresponds to husband's separate $50,000 contribution.

For example, husband produced no evidence indicating when the parties used the $50,000 to purchase a portion of the $300,000 worth of stocks. As noted above, the stocks in the Paine Webber Resource Management Account were purchased on different dates over at least an eighteen-month period. Obviously, the ratio between the value of the respective marital and separate contributions to the hybrid account would vary depending on when the contribution of the separate property was made. For instance, assuming a healthy stock market, husband's share would likely be less than the one sixth he suggests he is entitled to if the proceeds from the sale of husband's separate house were not available to purchase stocks until October 1997, eighteen months after a portion of the $250,000 marital contribution had been made. Other factors, including the actual stocks purchased with the $50,000, the respective rates of growth of the stocks in the account, and the amount and nature of any withdrawals from the account might also need to be considered in establishing the identity of the separate portion of the hybrid property. No such evidence was presented here, however.

Accordingly, the trial court did not err in finding that husband failed to meet his burden of proving retraceability of

the claimed separate portion of the Paine Webber Resource Management Account.

C. Credit for Post-Separation Mortgage Payments

Husband also contends that the trial court erred in not awarding him credit for his post-separation mortgage payments on the marital home. We disagree.

We have stated that,

> [a]lthough the separate contribution of one party to the acquisition, care, and maintenance of marital property is a factor that the trial court must consider when making its award of equitable distribution, Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions.

von Raab, 26 Va. App. at 249-50, 494 S.E.2d at 161. Here, the record indicates the trial court considered husband's post-separation mortgage payments. The record also discloses that husband was the primary wage earner during the marriage and retained exclusive use of the property after the parties separated. The continued mortgage payments on the marital home benefited both parties. Furthermore, husband presented no evidence showing that the funds used to make the post-separation mortgage payments were his separate property. Likewise, husband provided no evidence establishing the amount by which the equity in the marital home increased due to the post-separation payments. Under these circumstances, we find no abuse of

-

discretion in the trial court's decision not to award husband credit for his post-separation mortgage payments.

## II. SPOUSAL SUPPORT

Husband contends the trial court erred in awarding wife $2,600 per month in spousal support and in making the support permanent. He argues the amount of the award is excessive and unwarranted because the trial court failed to make express findings of facts and to discuss how every factor in Code § 20-107.1(E) upon which the court relied in making the award supported the award, as required by Code § 20-107.1(F). He further argues that, given husband's poor health and plan to retire soon, the trial court erred in making the spousal support award "permanent" rather than for a defined duration.

These arguments were not raised at trial. In his exceptions to the trial court's final decree of divorce, husband objected to the court's spousal support award to wife solely on the grounds that the award was "unreasonable and would require that [husband] deplete his award of assets in order to pay spousal support."

Pursuant to Rule 5A:18, we will not consider on appeal an argument that was not presented to the trial court. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). Furthermore, "Rule 5A:18 requires that objections to a trial court's action or ruling be made with specificity in order to preserve an issue for appeal." Collado v. Commonwealth, 33 Va.

-

App. 356, 367, 533 S.E.2d 625, 631 (2000). The purpose of Rule 5A:18 is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991); Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991) (en banc).

Accordingly, Rule 5A:18 bars our consideration of this assignment of error on appeal. Moreover, we find no reason in the record to invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18.

### III. ATTORNEY'S FEES

Husband lastly contends the trial court erred in awarding attorney's fees to wife. He argues that, in light of wife's having obtained $30,000 from marital assets prior to trial for her attorney's fees and considering her large equitable distribution award, she had no need for an award of attorney's fees. Moreover, husband argues, his due process rights were violated when the trial court awarded wife's attorney's fees based on the unsworn written statement of wife's counsel. According to husband, such a process did not allow him the "opportunity to contest his adversary's claim."

These arguments, like husband's spousal support arguments discussed above, were not raised before the trial court. Husband's sole objection to the final decree of divorce regarding

-

the award made therein of attorney's fees to wife reads: "[Husband] also objects to the award of attorney's fees."

Thus, husband is barred from raising these arguments for the first time on appeal. See Rule 5A:18; Collado, 33 Va. App. at 367, 533 S.E.2d at 631; Ohree, 26 Va. App. at 308, 494 S.E.2d at 488; see also Cottrell v. Commonwealth, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991) (holding that Rule 5A:18 bars consideration of even constitutional claims not raised in the trial court). Furthermore, the record reflects no reason to invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18.

For these reasons, we affirm the judgment of the trial court.

Affirmed.