COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Willis


JAMES R. PLASKER

                                                    MEMORANDUM OPINION*
v.        Record No. 0107-05-4                              PER CURIAM
                                                        OCTOBER 11, 2005
TERESA A. DEAN


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Leslie M. Alden, Judge

            (Eric F. Schell, on briefs), for appellant.

            (Kathleen O'Brien; Donald E. Anderson, III; Fite & O'Brien, Ltd.,
            on brief), for appellee.


        On appeal from an Amended Final Decree of Divorce *A Vinculo Matrimonii*, James R.

Plasker (husband) contends that the trial court erred in finding that he failed to prove

retraceability of his separate interest in the equity in the marital home, which he jointly owned

with Teresa A. Dean (wife).  Upon reviewing the record and the parties' briefs, we find no merit

in this appeal.  Accordingly, we summarily affirm the trial court's decision.  Rule 5A:27.[1]

                                        FACTS

        In July 1985, husband, who was unmarried at the time, sold his separately owned

residence located in Lakewood, Colorado ("the Colorado home"), and received net proceeds of

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] In light of the trial court's August 5, 2005 *nunc pro tunc* order, as of and effective
December 3, 2004, suspending finality of the Decree of Divorce *A Vinculo Matrimonii* entered
November 16, 2004 through December 10, 2004, we find wife's motion to dismiss husband's
appeal is without merit, and hereby deny it. We also find no merit in wife's argument that
pursuant to Rule 5A:18, husband failed to preserve for appellate review the question he now
raises on appeal.

$29,837.94. On July 31, 1985, those proceeds were deposited into a joint account maintained at the Citicorp Savings and Industrial Bank of Southwest Plaza, Littleton, Colorado ("the joint Citicorp account") by husband and wife, who were not married at that time.

On or about August 8, 1985, the parties closed the joint Citicorp account, withdrawing $35,709.22 from that account. On August 14, 1985, while still unmarried, the parties purchased a residence located at 12203 Lake James Drive, Herndon, Virginia for $188,500 ("the Lake James home"), which was titled jointly in their names. They contributed a total of $40,217.99 towards the purchase of that home, $3,000 of which was paid as an earnest money deposit and $37,217 of which was paid at the closing on the purchase of the property. The parties' down payment for the purchase of the Lake James home consisted of $35,709.22 withdrawn from the joint Citicorp account plus other funds. The parties borrowed $150,800 to complete the purchase of the Lake James home.

The parties married on April 12, 1986. On March 27, 1987, the parties refinanced the Lake James home and acquired a new loan in the amount of $153,100.

On March 15, 1992, the parties made an initial deposit on a contract for the construction of a new home to be located at 12104 Richland Lane in Herndon, Virginia ("the Richland home"). From March 15, 1992 through October 21, 1992, the parties made payments for the Richland home towards the cost of construction, landscaping and extras, including deposits, totaling approximately $59,972. Of those payments towards the Richland home, $42,216 was paid directly to the homebuilder, as a deposit or earnest money, and $17,756 was paid as extra costs outside of closing. All of the payments towards the Richland home came from the parties' marital funds prior to the closing on the purchase of that home and prior to the sale of their Lake James home.

On October 21, 1992, the parties sold the Lake James home for $290,000 and realized net proceeds from that sale of $121,050.39. The net proceeds received on the sale of the Lake James home were given to the settlement attorney for the purchase of the Richland home. On October 22, 1992, the parties took out a loan in the amount of $500,000 to purchase the Richland home and received approximately $45,000 back at settlement. The $45,000 payment to the parties represented the difference between the funds realized from the sale of the Lake James home, plus the funds already paid towards the purchase of the Richland home, and the funds necessary for their $75,853.12 down payment for the Richland home. The parties put the $45,000 in a joint account, which was not the same account from which all of the approximate $59,972 in payments towards the construction of the Richland home had come.

On or about November 16, 1998, the parties refinanced the Richland home, taking out a new loan in the amount of $500,250, and withdrawing equity in the amount of $27,443.97. The parties placed the funds received from the refinance into a joint marital account. The parties then used those funds from the refinance and other funds to make improvements to the Richland home. From the date of the parties' purchase of the Richland home to the date of their separation in October 2002, the parties made payments towards the mortgage and for improvements on their home from joint marital funds.

As of August 18, 2004, the Richland home was appraised for $1,160,000. There was an outstanding encumbrance on the Richland home as of September 8, 2004 of $448,891.

Based upon this record, the trial court found as follows:

> [B]ased on the multiple transactions over the years, that
> [husband's] separate interest in the equity is no longer retraceable
> by a preponderance of the evidence from the current title, which is
> jointly held in the marital residence. I do consider as a factor
> under § 20-107.3 that he did contribute separately.

The trial court awarded husband fifty-one percent of the net proceeds and wife forty-nine percent of the net proceeds upon the sale of the Richland home.

On appeal, husband argues that the trial court erred in finding he failed to prove that his separate contribution of $29,837.94 from the sale of the Colorado home was retraceable in dividing the Richland marital home's equity, and in failing to calculate his respective interest in the Richland home's equity using the "Brandenburg Formula," as adopted in Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998).

ANALYSIS

A decision regarding equitable distribution rests within the sound discretion of the trial court and will not be disturbed unless it is plainly wrong or without evidence to support it. See McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994) (citing Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)). "Unless it appears from the record that the trial judge has not considered or has misapplied one of the statutory mandates, this Court will not reverse on appeal." Ellington v. Ellington, 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989).

Pursuant to the provisions of Code § 20-107.3(A)(3), property may be classified as part marital and part separate, or "hybrid" property. In pertinent part, Code § 20-107.3(A)(3)(e) provides that

> [w]hen marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

"Whether a transmuted asset can be traced back to a separate property interest is determined by the circumstances of each case, including the value and identity of the separate

interest at the time of the transmutation." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). "[T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability." Id. at 248, 494 S.E.2d at 160. "This process involves two steps: a party must (1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997).

> If, however, separate property is contributed to marital property, contributed to the acquisition of new property, or retitled in the names of both parties, and suffers a "loss of identity," the commingled separate property is transmuted to marital property. In other words, if a party "chooses to commingle marital and non-marital funds to the point that direct tracing is impossible," the claimed separate property loses its separate status. Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the "unknown amount contributed from the separate source transmutes by commingling and becomes marital property."

Id. at 208-09, 494 S.E.2d at 141 (citations omitted).

Husband acknowledges that he bore the burden of identifying what portion of the equity in the jointly owned Richland home was separate and the burden of directly tracing that portion to his separate contribution to the parties' marital residence on Lake James Drive.

While husband identified his separate contribution of funds from the sale of the Colorado home to the parties' Lake James home acquired before they were married, the multiple transactions over the years thereafter commingled those funds with marital funds. The transactions leading up to and including the sale of the Lake James home and the purchase of the Richland home, including 1) the use of separate and joint funds for the payment of the mortgage prior to the parties' marriage; 2) the refinance of the loan on the Lake James home; 3) the use of marital funds throughout the marriage to pay the mortgage; 4) the use of marital funds towards the costs of building the Richland home; 5) the realization of approximately $121,000 from the

sale of the Lake James home; 6) the application of the some of the proceeds from the sale of the Lake James home towards the purchase of the Richland home; and 7) the parties' receipt of $45,000 from the difference between the proceeds from the Lake James home and the down payment required at the closing for the Richland home, refuted the establishment by a preponderance of the evidence of the identity of separate funds at the time of the purchase of the Richland home. In addition, the multiple transactions since the purchase of the Richland home, including 1) the use of marital funds throughout the marriage to pay the mortgage; 2) the refinance of the loan for the Richland home; and 3) the use of the funds from the refinance loan and joint marital funds to improve the property, further refuted establishment of the identity of separate funds at the time of the sale of the Richland home.

In light of the multiple transactions that occurred after the purchase of the Lake James home up through the impending sale of the Richland home, we cannot say that the trial court abused its discretion in finding that husband failed to carry his burden of retracing his separate funds in the equity in the Richland home. The record establishes that the trial court properly applied all of the statutory mandates, and the evidence supported the trial court's findings of fact underlying its holding.

We also find no merit in husband's argument that the trial court erred in failing to apply the Brandenburg formula. Initially, we note that although this Court in Hart approved of the Brandenburg formula, we "have not adopted an exclusive method for determining how to apportion the increase in value of retraced separate property." Martin v. Martin, 27 Va. App. 745, 753, 501 S.E.2d 450, 454 (1998). Moreover, in order to apply the Brandenburg formula to determine the value of a separate contribution to a marital asset, the trial court must have identifiable values for the non-marital contribution, the marital contribution, the total

- 6 -

contribution, and the equity. <u>Hart</u>, 27 Va. App. at 65, 496 S.E.2d at 505. In the instant case, the trial court did not have identifiable values for all of those factors.

For these reasons, we affirm the trial court's decision.

<u>Affirmed.</u>