COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


JULIETTE MOSTELLER

v.      Record No. 2889-07-4

CHRISTOPHER BROOKS, SR.

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
DECEMBER 23, 2008


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Juliette Mosteller, *pro se*.

George H. Ragland, Jr. (Ragland & Slugg, P.C., on brief), for
appellee.


Juliette Mosteller (wife) appeals from a final decree dissolving her marriage to

Christopher Brooks, Sr., (husband) and equitably distributing the marital estate. On appeal, she

contends husband committed perjury in the trial court and that his attorney committed fraud. She

also contends the court committed reversible error in the way it classified and divided various

items of property. Finally, she contends the trial court's requiring her to pay a portion of

husband's attorney's fees was error. We hold the trial court committed no reversible error, and

we affirm.

I. EQUITABLE DISTRIBUTION

When reviewing a trial court's decision on appeal, we view the evidence in the light most

favorable to the prevailing party. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704

(2002). That principle requires us to "'discard the evidence of [wife] in conflict with that of

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[husband], and regard as true all the credible evidence favorable to [husband] and all fair inferences that may be drawn' from the credible evidence." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). An appellate court will not reverse a trial court's equitable distribution "'unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence[, viewed in the light most favorable to the party prevailing below,] fails to support the findings of fact underlying his resolution of the conflict in the equities.'" von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (quoting Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990)).

## A. PERJURY AND FRAUD

Wife contends the equitable distribution award should be set aside because husband and his attorney conspired to commit perjury and because the attorney committed fraud on the court by inserting provisions into the final decree of divorce that were not set out by the trial court in its ruling from the bench. Pursuant to Rule 5A:18, absent invocation of an applicable exception to the rule, we may not consider on appeal an argument that was not presented, with specificity, to the trial court. See, e.g., Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004), aff'd on other grounds, 269 Va. 3, 607 S.E.2d 119 (2005). Wife cites only her written objections to the final decree as establishing that she preserved this objection for appeal. However, wife failed to raise these issues in her objections to the final decree, and we have located no other place in the record of the proceedings indicating she presented these issues to the trial court. See Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992) ("[W]e will not search the record for errors in order to interpret the appellant's contention and

correct deficiencies in a brief."). Thus, Rule 5A:18 prevents us from considering these issues on appeal.

## B. CLASSIFICATION OF PROPERTY

A trial court's classification of property is a finding of fact to which we must give deference on appeal. Robinson v. Robinson, 46 Va. App. 652, 661, 621 S.E.2d 147, 151 (2005) (en banc). Property acquired during the marriage is presumptively marital, unless proved to the satisfaction of the trial court to be separate property. See Code § 20-107.3(A)(2)(iii); see also Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 142 (1997). "A partner in a marriage owes his labor during the marriage to the marital partnership[;][t]he fruits of that labor, absent express agreement, are marital property." Stainback v. Stainback, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990). Where marital and separate property are commingled, the property is presumed marital, and "the party claiming a separate interest in transmuted property bears the burden of proving retraceability." von Raab, 26 Va. App. at 248, 494 S.E.2d at 160. Where a particular link in the tracing chain is based solely upon the unsupported testimony of one spouse, the trial court is free to reject that testimony and find the asset to be marital property. See 1 Brett R. Turner, Equitable Distribution of Property § 5.63, at 638-39 (3d ed. 2005).

### 1. The Parties' Alleged Agreement Regarding Separate Property

Code § 20-155 provides that in order for the parties to enter into a valid marital agreement, the agreement must be signed by both parties. Here, husband testified that although he and wife had discussed such an agreement, the signature on the document titled "Brooks's Family Constitution" was not his. The trial court, as the finder of fact, was entitled to accept husband's testimony that the signature was not his and to refuse to follow the terms of the purported agreement on those grounds. The evidence, viewed in the light most favorable to husband, also failed to establish a verbal agreement to reject applicable equitable distribution law

if the parties were to divorce, and in any event, Code § 20-155 does not authorize binding verbal agreements.

### 2. Classification of the Joint Bank Account and the Parties' Respective Individual Accounts

Wife contends the court should have treated the joint Bank of America account as the only marital account and classified the parties' individual accounts as separate property. The record contains no indication the trial court made an award based on the contents of those accounts upon separation, and wife's only discernable claim on brief as to the impact of the supposed error is that the court misclassified the parties' investments for the purchase of the Mimosa Tree Court residence. We hold the court did not err in the way wife claims.

As we concluded *supra*, the family constitution does not control the classification of the parties' property because the evidence supports a finding that husband never signed it. Also, the evidence established that wife's earnings during the marriage—which, given the absence of a valid agreement to the contrary, were marital property—were routinely deposited into her individual account. Further, with the exception of $5,000 of the total, the trial court in fact classified as wife's separate property the $40,583 wife paid toward the down payment on the residence in the form of a check written on May 10, 2003, from her separate account. The court credited husband's testimony that a check for $5,000 he wrote to wife two days later was to reimburse her for an identical portion of the $40,583 amount and that, together with a loan he received from his employer and $350 he paid for the appraisal and credit report, this constituted his contribution to the down payment. Husband offered into evidence his $5,000 check, which bore the notation "NEW HOUSE" on the memo line. Husband's testimony, coupled with the check and notation, provided ample evidence from which the trial court could conclude wife contributed $35,583 rather than $40,583 in separate funds to the down payment.

The trial court also was not required to credit wife for an additional $3,980 spent on upgrade "options" for the home. These options were purchased several weeks after the $40,583 payment at a time when at least two of wife's military paychecks, earned during the marriage, had been deposited into the account and numerous other sums had been deposited and withdrawn from the account, such that the trial court could have found that the $3,980 was marital property. In addition, the record contains no indication the trial court included this expenditure in its calculation of the marital contributions to the property. It is well settled that parties are not entitled to dollar-for-dollar credit for improvements to property and that the relevant figure is the value the improvements add to the equity in the property. See, e.g., Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998). The court expressly included the amount by which wife increased the value of the property by adding a deck and hot tub with separate funds after the parties separated. In the absence of evidence of the value of the upgrades rather than their cost, the trial court did not err in not including the upgrades in its classification of the marital residence.

### 3. Fannie Mae Loan in Husband's Name

Husband's evidence established the "forgivable loan" debt was an unsecured five-year financing tool for which he was eligible based on his employment with Fannie Mae. Fannie Mae paid the entire amount of the loan to the seller of the parties' residence, and at the end of each of five years during which husband continued to work for Fannie Mae, the employer would "forgive" one-fifth of the loan. For each year in which one-fifth of the loan was forgiven, the employer would add that one-fifth to husband's income figure for the year. If husband left his employment with Fannie Mae before the end of the five-year period, he was responsible for repaying any portion of the loan not yet forgiven. At the time of the parties' separation, Fannie

Mae had forgiven one-fifth of the loan balance in the amount of $4,584, and this sum had been included in husband's salary for that year.

Because husband's salary during the marriage was marital property, the trial court's classification of this sum as marital property was not error. Because husband's earnings following the divorce were his separate property and because he alone remained liable for the balance of the loan, the evidence also supported the trial court's finding that $18,334 of the equity acquired was husband's separate property. See O'Neal v. O'Neal, 929 S.W.2d 725, 726 (Ark. Ct. App. 1996) (holding all of a forgivable loan paid to the husband after the parties separated but before the divorce was final was the husband's separate property because, although husband "acquired the right to the $35,000.00 during the marriage, he did not earn it during the marriage," based on "testimony . . . that the money was compensation for future services and contingent upon [husband's] future performance"); see also 2 Turner, supra, § 6:101, at 538 (reasoning that "[d]ebt proceeds are an advance on the funds eventually used to repay the debt" and that "the character of the funds used for repayment" defines "the character of the proceeds").

## C. DIVISION OF PROPERTY

### 1. Wife's Request for Credit for Post-Separation Payments for the Marital Residence

"[T]he separate contribution of one party to the acquisition, care, and maintenance of marital property," as by post-separation mortgage payments or upkeep, "is [merely] a factor that the trial court must consider when making its award of equitable distribution," and "Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit for such contributions." von Raab, 26 Va. App. at 249-50, 494 S.E.2d at 161; see Barker v. Barker, 27 Va. App. 519, 543, 500 S.E.2d 240, 252 (1998).

Wife contends "the trial court failed to give [her] any credit for post separation mortgage payments," but the record belies this contention. In dividing the equity in the marital residence,

the trial court expressly held husband responsible for half the $84,640 by which wife reduced the mortgage principal balance, deducting it from husband's share of the equity. The trial court's failure to compensate wife for her expenditures for interest, taxes, insurance, and other expenses pending sale of the home was not an abuse of discretion on the facts of this case. The evidence showed that when the parties separated on June 19, 2005, husband left the residence, while wife remained in the home. Although the record may have contained some conflicting evidence, wife's attorney represented at the time of the equitable distribution hearing on July 17, 2007, that she continued to reside in the home and conceded she had exclusive possession of the residence. Husband also offered evidence that the home had a rental value of approximately $3,000 per month, although wife testified she had been unable to rent the home. The trial court was entitled to view this evidence in the light most favorable to husband. Further, the final decree provided that wife would continue to receive credit for husband's fifty percent share of the principal payments pending the sale of the home. Although the court held wife responsible for all interest payments, the evidence established that her regular annual income from her primary employment, not including her real estate sales and military reserve pay, was approximately 15% greater than husband's, and she would likely have qualified for an interest deduction on her income taxes. On these facts, we hold the trial court did not abuse its discretion in refusing to give her credit for the full amount of the mortgage payments.

### 2. Alleged Dissipation of Marital Funds

Waste or dissipation of assets occurs when "one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage" during or after an "irreconcilable breakdown" in the marriage. Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992). Wife has not shown that the funds at issue were withdrawn or used *during or after the breakdown* of the marriage. Instead, all evidence shows husband's use of the funds occurred

- 7 -

*before* the marital breakdown and, in fact, largely precipitated it. Thus, husband's use of the funds did not constitute dissipation of marital assets, and the trial court did not err in refusing to award wife the credit she requested.

### 3. Exclusion of Evidence of Wife's Non-Monetary Contributions to the Family

Wife failed to preserve for appeal her claim that the trial court erroneously refused to allow her to present testimony about her non-monetary contributions to the well-being of the family. See Rule 5A:18. At trial, her attorney represented that the purpose of his question concerning husband's son's grades was "just to establish the atmosphere in the house at the time." He did not specifically proffer what husband's answer or series of answers to this line of questioning would be. See, e.g., Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992). Further, he did not represent that the particular line of questioning was relevant to establish wife's non-monetary contributions to the well-being of the family or to any other Code § 20-107.3(E) factors. Wife's counsel also did not contend that the trial court's ruling resulted in a violation of her due process rights. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488-89 (1998) (holding that Rule 5A:18 applies to bar even constitutional claims); see also Williams v. Commonwealth, 270 Va. 580, 583, 621 S.E.2d 98, 100 (2005). Thus, Rule 5A:18 prevents us from considering this issue.

### 4. Consideration of the Statutory Factors for Distribution

A court fashioning an equitable distribution award must consider the statutory factors in exercising its discretion, but it need not make specific findings of fact regarding those factors. See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 577-78 (1992). On appeal, as long as the record, *viewed in the light most favorable to the prevailing party*, supports the result, the court need not quantify what weight it gave to each factor. E.g. Marion v. Marion, 11 Va. App. 659, 664, 401 S.E.2d 432, 436 (1991). Determining the credibility of the witnesses is manifestly

the job of the trial court, e.g. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc), and does not by itself constitute a showing of bias.

Here, the court recited its consideration of each of the statutory factors in its ruling from the bench on August 24, 2007, and it expressly incorporated that consideration into the final decree of divorce. We have discussed some of those factors in detail above and do not reconsider them here. We also note, contrary to wife's assertion on brief, that the trial court made no finding that wife's "unhapp[iness] with aspects of [husband's] handling of the couple's finances" was founded or that husband deserted the marriage, and it granted the divorce based on a one-year separation. Further, husband's testimony on the money-handling issue supported a finding that he did not steal or mishandle marital funds. Husband testified the parties expressly discussed the fact that wife's income was greater than his and, therefore, that his "ability to contribute was less," and he said "wife [was] agreeable to that arrangement."

Although wife contends on appeal that the trial court's finding that the parties' non-monetary contributions were "roughly equal" was erroneous, at trial her attorney took the position that "the non-monetary contributions are nearly equal or not really significant in this case," and this is exactly what the trial court found. "[Wife] will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with [her] representations." Asgari v. Asgari, 33 Va. App. 393, 403-04, 533 S.E.2d 643, 648 (2001). Further, the evidence, viewed in the light most favorable to husband, supported that finding.

Finally, the trial court did not err in stating that it was not the job of the court in effecting the equitable distribution "to balance the accounts between this couple throughout their entire marriage." The court observed that evidence concerning who paid which bills throughout the marriage was relevant to the issue of the parties' monetary contributions to the family but was not something for which wife would be entitled to a dollar-for-dollar credit. The record

documents that the trial court gave careful attention to the extent by which the parties contributed to the acquisition of the equity in the marital residence, the only funds tracing for which the parties might be entitled to dollar-for-dollar credit on the facts of this case.

Thus, we conclude the fashion in which the trial court weighed the Code § 20-107.3(E) factors did not constitute an abuse of discretion.

## II.  ATTORNEY'S FEES

Whether to award attorney's fees in a divorce matter is left to the sound discretion of the trial court.  See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). Factors to be considered may include a party's ability to pay a fee, Cirrito v. Cirrito, 44 Va. App. 287, 299-300, 605 S.E.2d 268, 274-75 (2004), and whether the party unnecessarily increased litigation costs through unjustified conduct calculated to delay resolution of the proceedings, Northcutt v. Northcutt, 39 Va. App. 192, 200-01, 571 S.E.2d 912, 916 (2002).

Here, the record indicated that wife changed attorneys three times while the proceedings were pending in the trial court, which required additional work on the part of husband's attorney, and that she proceeded *pro se* for a period of time, as well.  Wife filed subpoenas *duces tecum* that husband successfully quashed, and she maintained until just prior to trial that she had an interest in two properties owned by husband which she ultimately conceded were his separate property.  Wife also refused an offer to settle for an amount significantly more favorable to her than the amount the trial court actually awarded, at a time that would have allowed the parties to avoid preparing for trial, and the evidence established that wife earned more than husband.  On these facts, the award to husband of $10,000 of his attorney's fees of approximately $22,000 did not constitute an abuse of discretion.

Husband seeks an award of attorney's fees incurred on appeal.  We decline that request. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Although we

- 10 -

have held wife's appeal to be without merit, at least a portion of the appeal "addressed appropriate and substantial issues." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Although the record shows wife had a greater earning capacity than husband, husband's earning capacity and assets received in the equitable distribution were adequate to allow him to bear his own attorneys fees and costs on appeal.

### III. REQUEST FOR REMAND DUE TO LOSS IN VALUE OF HOUSE

Wife asks that this case be remanded "for consideration under Brandenburg with specific instructions that a new evaluation be conducted since the house has now lost $120,00 in value in the volatile housing market." The trial court's decree, however, provides an adequate formula for determining how to apportion the net proceeds or losses resulting from the sale of the marital residence. Thus, a remand for this purpose is not required.

### IV.

For these reasons, we hold the trial court did not err in fashioning the equitable distribution award or awarding attorney's fees, and we decline wife's request to sanction husband and his attorney and to remand for further proceedings. We also decline husband's request for an award of attorney's fees on appeal.

Affirmed.