COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Frank and Senior Judge Coleman
Argued at Alexandria, Virginia


ROBERT E. OLSEN
                                                  MEMORANDUM OPINION[*] BY
v.        Record No. 1553-09-4                    JUDGE LARRY G. ELDER
                                                      APRIL 27, 2010
BARBARA E. MACKAY


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jan L. Brodie, Judge

            Cory Frederick Goriup (Dorothy M. Isaacs; Surovell Markle
            Isaacs & Levy, PLC, on briefs), for appellant.

            Colleen C. Sweeney (William B. Reichhardt; William B.
            Reichhardt & Associates, on brief), for appellee.


        Robert E. Olsen (husband) appeals the equitable distribution ruling made by the trial court.

Husband argues the trial court erred by (1) classifying his civil lawsuit settlement proceeds as

marital property subject to equitable distribution; (2) awarding a lump sum distribution of $77,000

to Barbara E. Mackay (wife); (3) finding that the $10,000 earnest money deposit for the purchase of

the martial residence came from wife's separate property; and (4) failing to classify the $50,000

used for the down payment on the marital residence as husband's separate property.  We hold that

(1) wife met her burden of tracing the settlement proceeds into husband's separate account;

(2) the trial court properly classified the earnest money and down payment contributions as

wife's separate property and marital property respectively; and (3) the trial court did not abuse its

discretion in relying on the statutory factors enunciated in Code § 20-107.3(E).  Further, because

───────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

husband has presented judiciable issues on appeal, we decline to award wife attorneys fees. Accordingly, we affirm the trial court's findings.

I.

BACKGROUND

When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party below, granting it the benefit of all reasonable inferences. See Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834 (2003). Thus, a trial court's judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it. Jennings v. Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991). So viewed, the evidence proved that the parties were married on July 25, 1992, separated on May 2, 2007, and divorced on June 16, 2009. Husband and wife had one adopted child who was placed in wife's custody pursuant to a *pendente lite* order dated June 27, 2008. The trial court held a hearing from February 24 through February 26, 2009, to determine equitable distribution and spousal support.

Husband was previously employed as a Foreign Service officer with the United States Department of State until September 1994. Husband challenged his termination via the proper grievance procedures. After exhausting his administrative remedies, husband filed suit in federal court and pursued five claims, including two claims under the Administrative Procedure Act. The two Administrative Procedure Act claims were resolved in husband's favor, and he was reinstated with back pay. For the remaining claims, husband reached a settlement agreement through which he received $250,000, of which $50,000 was paid to his attorneys. Husband deposited the proceeds into his Charles Schwab account in May 2000. The parties stipulated that aside from the $200,000 deposit, this account and all funds therein were husband's separate property. Husband argued that the $200,000 settlement was his separate property; however, the trial court disagreed and held that it was marital property.

- 2 -

The parties jointly owned, as tenants by the entireties, a single-family home. The parties stipulated that husband used $100,000 of his separate funds and wife used $35,000 of her separate funds for part of the down payment. The parties disputed the source of the funds for the earnest money deposit and the remainder of the down payment. The trial court held that the $10,000 earnest money deposit came from wife's separate property and that husband did not meet his burden to prove that the remaining down payment of $50,000 was his separate property.

The trial court calculated the marital interest in the marital residence at $271,547. The other marital liquid assets totaled $26,503. The trial court further determined the $200,000 settlement proceeds were marital property, with $35,000 having been applied to improvements of the marital residence. Based upon these findings, the trial court divided the marital interest in the marital residence evenly between the parties and incorporated the proceeds into their respective equity shares of the residence. The trial court further ordered husband to make a one-time lump sum payment of $77,000 to wife for her share of the marital property.

Husband timely noted his objections, and this appeal followed.

## II.

## ANALYSIS

## A.

## SETTLEMENT PROCEEDS

On appeal, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); see Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be

given to their testimony, and has discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).

Classification as Separate Property

Husband argues the trial court erred in finding the money from his civil lawsuit settlement was marital property because his Administrative Procedure Act claims had already covered his economic losses. Specifically, husband contends that he was only unemployed for approximately three months and received compensation in the private sector exceeding his earnings as a Foreign Service officer, thereby rendering him ineligible under 5 U.S.C. § 5596(b)(1)(A)(i) of the Back Pay Act[1] to receive back pay. Accordingly, husband argues that the settlement proceeds from the remaining three claims were solely for pain, suffering, and other non-economic harms.

Under Code § 20-107.3(A), the trial court must determine "the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property." Further, "[i]n the case of any personal injury or workers' compensation recovery of either party," the trial "court shall classify [the proceeds] as part marital property and part separate property" "as defined in subsection H." Code § 20-107.3(A)(3). Subsection H defines the "marital share" of such an award[2] as "that part of the total personal injury or workers'

---

[1] The Back Pay Act is a remedial statute that "authorizes retroactive recovery of wages whenever a federal employee has 'undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or part of' the compensation to which the employee is otherwise entitled." Jarecki v. United States, 590 F.2d 670, 677 n.9 (7th Cir. 1979) (quoting 5 U.S.C. § 5596(b)).

[2] For purposes of this appeal, there is no meaningful distinction between a civil wrongful termination award and a personal injury or workers' compensation award. Husband sought compensation for lost wages and other injuries associated with his termination, and Code § 20-107.3 contemplates the distribution of all property accumulated during the marriage, regardless of the source. See Roane v. Roane, 12 Va. App. 989, 994, 407 S.E.2d 698, 701 (1991)

compensation recovery attributable to lost wages or medical expenses to the extent not covered

by health insurance accruing during the marriage and before the last separation of the parties."

Accordingly,

> [T]he circuit court must first determine what part of the recovery
> was attributable to lost wages and medical expenses not covered by
> health insurance, and classify this portion as marital property.  The
> remainder of the recovery, if any—that portion not "attributable to
> lost wages or [unreimbursed] medical expenses"—is separate
> property.

Chretien v. Chretien, 53 Va. App. 200, 205, 670 S.E.2d 45, 48 (2008); see 2 Brett R. Turner,

Equitable Distribution of Property § 6.55 (3d ed. 2005).  Husband "bore the burden of proving

that some or all of the [settlement] was separate property."  Chretien, 53 Va. App. at 205, 670

S.E.2d at 48.

As part of his settlement agreement, husband signed a stipulation and order of dismissal

(stipulation) that set forth the terms and conditions of husband's receipt of the settlement

proceeds.  The stipulation states, in pertinent part:

> [I]t is also agreed, by and among the parties, that the payment
> referenced in Paragraph 2 above [$250,000] represents the entire
> amount of the settlement, including but not limited to any claims
> for back pay, front pay, employment benefits (including but not
> limited to retirement and health care benefits), damages, interest,
> costs, and attorney's fees.

Husband testified that he suffered emotional pain and marital stress as a result of his termination.

However, the clear language of the stipulation does not allocate any compensation for such

non-economic losses.  Cf. Thomas v. Thomas, 13 Va. App. 92, 96, 408 S.E.2d 596, 598-99

(1991) ("Absent proof that the settlement funds were exclusively for injuries personal to the

---

("The legislative direction to the trial court is clear: divide on an equitable basis the *value of the* property acquired by the joint efforts of the parties."); Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987) (noting that Code § 20-107.3 "is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse").

husband and did not include consideration for economic losses, the factfinder was not reasonably able to conclude that the husband rebutted the statutory presumption."). Moreover, the trial court did not err in disregarding the parties' 2000 income tax return. Even though the return could potentially evince the parties' intent to treat the settlement proceeds as compensation for non-economic losses, husband has pointed to no authority, and we have found none, that mandates the trial court's consideration of this fact.

Husband's reliance on 5 U.S.C. § 5596(b)(1)(A)(i) in support of his argument that the settlement proceeds did not compensate economic losses is not dispositive. This provision of the Back Pay Act entitles an aggrieved federal employee to

> an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period.

5 U.S.C. § 5596(b)(1)(A)(i). The Foreign Service Grievance Board awarded husband back pay from September 22, 1994, to May 3, 1996, and instructed the parties to make the appropriate deductions. According to husband's testimony, he was unemployed for approximately three months and subsequently earned an annual salary in the private sector exceeding his salary as a Foreign Service officer. This windfall, according to husband, renders him ineligible from receiving back pay for his Administrative Procedure Act claims. See Paroczay v. United States, 369 F.2d 720, 724 (Ct. Cl. 1977) ("[A]ny amounts earned through any other employment are to be deducted from back pay."). Husband argues this ineligibility for back pay under 5 U.S.C. § 5596(b) extends to the settlement proceeds from his remaining three claims so that those monies must apply towards non-economic losses. We disagree.

Nothing in the statutory language of the Back Pay Act limits a grievant's recovery for economic losses under separate claims or entitlements. Indeed, the claims contemplated by the

settlement proceeds are separate causes of action with their own separate remedies. Moreover, the clear language of the stipulation does not mention husband's recovery for back pay under his Administrative Procedure Act claims. Instead, it addresses only economic losses, including back pay. Accordingly, the trial court did not err in looking to the plain language of the stipulation to reject husband's attempt to prove "though the process of elimination . . . the settlement funds consisted only of non-economic losses." Thomas, 13 Va. App. at 96, 408 S.E.2d at 598.

In light of this conflicting evidence, the trial court did not err in finding "the clear language of the settlement agreement more persuasive" than husband's contentions that the award was not for lost wages. Accordingly, the trial court did not abuse its discretion in finding that husband did not meet his burden to prove that the $200,000 was his separate property.

Tracing the Settlement Proceeds

Husband argues that even if the settlement proceeds were marital property, depositing those funds into his separate Charles Schwab account leads to the presumptive classification of the proceeds as his separate property. Husband contends that because wife did not provide documentary evidence that separated the proceeds from the additional funds deposited over the subsequent eight years, she did not meet her burden to trace the source of the funds. Husband further argues the trial court erred in adopting a "first in last out accounting method" that is "inequitable and an unacceptable accounting practice." Specifically, husband avers that the trial court did not account for the 50% reduction in value of the account due to market fluctuations.[3]

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

---

[3] Neither party has argued that the settlement proceeds constituted a "gift."

Code § 20-107.3(A)(3)(d). "Whether a transmuted asset can be traced back to [its original] property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of the transmutation." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997). We will reverse the trial court's decision only upon a showing of abuse of discretion. Id. at 246, 494 S.E.2d at 159; see Code § 20-107.3(A)(3)(d) (affixing the evidentiary burden of the accountable party to prove retraceability at the "preponderance of the evidence" standard).

It is uncontested that husband deposited the settlement proceeds, determined to be marital property, into his separate Charles Schwab account. Thus, the presumption arises that the settlement proceeds were transmuted into husband's separate property, and wife bore the burden of retracing that portion of the account that retained its identity as the marital property.[4] See Holden v. Holden, 31 Va. App. 24, 27, 520 S.E.2d 842, 844 (1999). The issue we must decide is what quantum of evidence wife needed to show in order to satisfy her burden of proof.

From the outset, we note "'[contributed] property does not become untraceable merely because it is mixed with [commingled] property in the same asset.'" Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 141-42 (1997) (quoting Brett R. Turner, Equitable Distribution of Property, at 266 n.591 (1994)). Moreover, "tracing of the [contributed] portion of hybrid property does not require the segregation of the [contributed] portion." Id. at 207, 494 S.E.2d at 141. Rather, the party must "trace those [contributed] funds to the account and . . . prove that those discrete funds could be identified as being in the account." Holden, 31 Va. App. at 29, 520 S.E.2d at 845.

---

[4] Ordinarily when we analyze tracing issues, one party seeks to prove the contested property retains its original separate classification within the commingled marital asset and, thus, is ineligible for equitable distribution. By contrast, here, we face the converse situation where husband deposited marital property into his separate account, and wife contends the property should retain its original marital classification.

The party who bears the burden of proving retraceability must show by a preponderance of the evidence 1) what portion of the commingled asset can be sourced to the contributed property, and 2) that the contributed property retained its identity under the original classification despite subsequent withdrawals, if any. Each piece of the tracing puzzle requires a different type of evidence to satisfy the burden of proof. When a party seeks to prove that contributed property is a partial source of funds in a commingled asset, she is "only required to trace those [contributed] funds to the account and to prove that those discrete funds could be identified as being in the account." Id.; accord Robbins v. Robbins, 48 Va. App. 466, 479, 632 S.E.2d 615, 621-22 (2006) ("Proof of the separate classification of source funds may be straightforward enough."). However, where there has been significant activity in the form of multiple deposits to and withdrawals from the commingled account, the party may be required to show the intent contemporaneous with each new transaction in order to prove that the parties intended to keep the contributed property separate and distinct from the remainder of the commingled asset. See McIlwain v. McIlwain, 52 Va. App. 644, 660, 666 S.E.2d 538, 546 (2008); Robbins, 48 Va. App. at 479, 632 S.E.2d at 622 (requiring proof of "where the withdrawn funds went, when and why they were transferred, for what purpose they may have been ultimately used, as well as what contemporaneous financial records show about each"); Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000) ("[T]he identity of husband's separate funds had been lost in countless unspecified transactions involving marital funds, resulting in the irreversible transmutation of separate into marital property."). This intent may be established by direct or circumstantial evidence. See Robbins, 48 Va. App. at 477, 632 S.E.2d at 621

Unquestionably, wife met her burden of proving the settlement proceeds contributed as a source of the total funds to the Charles Schwab account. The parties stipulated that the settlement proceeds were deposited into husband's separate Charles Schwab account, and wife

submitted bank statements further evincing this deposit. Husband, however, argues there was significant activity in the subsequent nine years, and there has been "at least a million dollars of cash that's gone in and out of that account since" the deposit of the settlement proceeds. Husband further asserted the account suffered a 50% reduction in value since October 2007 due to market fluctuations.[5] In light of this alleged activity, wife must prove the "intent of [husband,] who made the withdrawal, determined as of the time the withdrawal was made." Id. at 478, 632 S.E.2d at 621.

Wife has met her burden of showing husband's intent because all evidence of transactions occurring within the Charles Schwab account is buttressed by his own testimony. Husband admitted that, with the exception of $35,000 used towards refurnishing the marital residence, "no disbursements [were] tied specifically to the $200,000 portion of [the Charles Schwab] account." This testimony establishes the requisite intent to keep the settlement proceeds separate and distinct within the commingled account. See Holden, 31 Va. App. at 29, 520 S.E.2d at 845 (discounting other deposits and withdrawals in the parties' commingled bank account where the evidence confirmed husband's intent to deposit his separate funds into the

---

[5] Notably, husband has not provided documentary evidence to support his claims of this activity. We owe deference to the trial court in equitable distribution proceedings, and we ask ourselves only whether the evidence is sufficient, at the standard of proof by a preponderance, to support the trial court's rulings. Lapidus v. Lapidus, 226 Va. 575, 580, 311 S.E.2d 786, 789 (1984); Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 882 (2003). While wife retained the burden of proving retraceability, husband gave no reason for the trial court to consider whether wife had to prove additional contemporaneous intent with the alleged activity beyond what she had already proffered in order to trace the marital funds. See, e.g., McIlwain, 52 Va. App. at 659, 666 S.E.2d at 546 (noting the record *affirmatively* showed the parties used the funds in a commingled account to pay marital debt owed to the federal government, and multiple withdrawals of significant value were taken out of the account with no evidence as to their purpose). Absent credible evidence, there was nothing for wife to further rebut. Indeed, we are hesitant to require a quantum of evidence that is impractical and unworkable when neither party has given us reason to do so. See Turner, supra, § 5:59 ("If the policies behind the marital property presumption were strictly followed, the law would require more detailed evidence than is ever available, and the exchange provision would lose all effect.").

account for the purpose of purchasing marital property with his wife). Moreover, the settlement proceeds comprised the majority of the funds in the Charles Schwab account at the time of its deposit in May 2000, as the account contained $262,481. Since that time, the account has grown to approximately $895,000. While husband may also have contributed his own funds to the Charles Schwab account, such evidence is irrelevant when viewed against his admission that their intent was to keep the settlement proceeds separate.[6]

Wife's evidence that the $200,000 settlement proceeds were deposited into husband's Charles Schwab account is sufficient to meet her burden to prove that this marital property was contributed as a partial source to husband's separate account. Wife further proved that the settlement proceeds retained their identity as marital property because husband admitted that the subsequent activity in the account was not specifically tied to the settlement proceeds, except for the $35,000 withdrawn to refurnish the marital residence. This, in addition to the fact that the settlement proceeds comprised a significant majority of the Charles Schwab account at the time of the deposit, is sufficient to prove retraceability by a preponderance of the evidence. Accordingly, the trial court properly found wife had sufficiently traced the remaining $165,000 in settlement proceeds and that these funds retained their character as marital property subject to equitable distribution.

---

[6] We further note wife has not argued she is entitled to any appreciation in value of the Charles Schwab account because of the deposit of the settlement proceeds. See Code § 20-107.3(A)(3)(a) (authorizing the trial court to classify any "increase in value [as] marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases"). Wife simply requested the remainder of the settlement proceeds be considered marital property and not that a percentage value of the Charles Schwab account be so classified. Thus, absent evidence that the remaining $165,000 has depreciated, we need not consider husband's separate contributions to the account.

B.

CONTRIBUTIONS TO THE MARITAL RESIDENCE

Husband argues the trial court erred in finding that the $10,000 earnest money deposit for

the purchase of the marital residence was wife's separate property. He further contends the trial

court erred in failing to classify the $50,000 used toward the down payment as his separate

property.

> When the separate property of one party is commingled into the
> separate property of the other party, or the separate property of
> each party is commingled into newly acquired property, to the
> extent the contributed property is retraceable by a preponderance
> of the evidence and was not a gift, each party shall be reimbursed
> the value of the contributed property in any award made pursuant
> to this section.

Code § 20-107.3(A)(3)(g). "The burden of proof that the transfer was a gift is upon the party

seeking to establish the gift." Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003).

"A trial court's decision, when based upon credibility determinations made during an *ore

tenus* hearing, is owed great weight and will not be disturbed unless plainly wrong or without

evidence to support it." Douglas v. Hammett, 28 Va. App. 517, 525, 507 S.E.2d 98, 102 (1998).

We owe the trial court this deference "[b]ecause the trial court's classification of property is a

finding of fact." Rammey v. Rammey, 45 Va. App. 17, 31, 608 S.E.2d 485, 492 (2005).

Moreover, "'[t]he credibility of the witnesses and the weight accorded the evidence are matters

solely for the fact finder who has the opportunity to see and hear that evidence as it is

presented.'" Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003) (quoting

Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

Husband argues he introduced a form purportedly documenting two checks from his

Charles Schwab account to pay for the $10,000 earnest money deposit and that this evidence is

more credible than wife's evidence. In opposition, wife contended that the $10,000 came from

her separate IRA account. She proffered an IRA withdrawal statement to prove that $10,000 was placed in the parties' joint account. Husband posits, however, that because the date of the sales contract indicates that the earnest money was tendered on April 23, 1998, wife could not have used her separate funds to finance the earnest money because she did not make the withdrawal request until May 30, 1998.

With respect to the $50,000 down payment, husband argues he met his burden of proving the funds were a gift from his parents. Husband concedes his original intent was to treat the money as a loan, but contends the loan was converted into a gift. Husband further acknowledges he gave contradictory answers between his testimony and interrogatories, but nonetheless asserts his documentary evidence proves that he never repaid his parents for the loan.

The trial court was tasked with evaluating conflicting documentary evidence regarding the source of the $10,000 earnest money deposit. The trial court held, "based on the credible evidence and the timing of the withdrawal," that the $10,000 came from wife's separate account. The IRA withdrawal statement supports this factual finding, and we may not second-guess the trial court's determination.

Further, the trial court did not err in rejecting husband's testimony that the funds for the $50,000 down payment were a gift from his parents. The trial court noted husband "was unable to provide a note to support [his] contention," and, "in sworn answers to interrogatories, he repeatedly and unequivocally state[d] that the loan was replaced by funds from the second mortgage loan." In light of these contradictory statements, the trial court did not err in finding husband's "testimony [not] credible that the $50,000 was his separate contribution."

The record fully supports the trial court's factual findings and credibility assessments. Accordingly, we cannot say the trial court erred in its conclusions regarding the sources of the $10,000 earnest money and $50,000 down payment.

## C.

## LUMP SUM EQUITABLE DISTRIBUTION

Husband argues the trial court erred in awarding wife a lump sum equitable distribution award of $77,000.[7] Specifically, husband argues the trial court committed reversible error by failing to articulate the consideration it gave to any particular factor of Code § 20-107.3.

Code § 20-107.3(D) authorizes the trial court to grant a monetary award to either party "based upon the equities and the rights and interests of each party in the marital property." Code § 20-107.3(E) sets forth the factors a trial court must consider when apportioning "[t]he amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment."

"'What weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion.'" Robbins, 48 Va. App. at 481, 632 S.E.2d at 622 (quoting Owens v. Owens, 41 Va. App. 844, 859, 589 S.E.2d 488, 496 (2003)). "If the [trial] court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." Fadness v. Fadness, 52 Va. App. 833, 842, 667 S.E.2d 857, 862 (2008). Moreover, there is no presumption favoring an equal distribution of marital assets. See Matthews v. Matthews, 26 Va. App. 638, 645, 496 S.E.2d 126, 129 (1998); Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986).

In this case, the combined marital assets subject to equitable distribution—the liquid marital assets, the remaining settlement proceeds, and the marital interest in the marital residence—totaled approximately $460,000. Wife was awarded $135,774 as her interest in the

---

[7] Because the trial court properly concluded the settlement proceeds were marital property and wife had met her burden of tracing the money to husband's Charles Schwab account, we need not address the propriety of the trial court's alternate ruling relying on the disparity between the parties' assets.

marital residence and $77,000 "as her interest in all other marital account assets," bringing her total interest to approximately $212,000, or less than 50% of the total marital assets.

The record reflects the great detail with which the trial court reviewed the factors and applied them to the facts before it to fashion this equitable distribution award, and the evidence supports its findings. Specifically, the trial court found "the contributions of the parties to the family well-being and the care and maintenance of the marital property, both monetary and nonmonetary, to be relatively equal." See Code § 20-107.3(E)(1), (E)(2). Further, neither party claimed medical disability or inability to obtain full-time employment. See Code § 20-107.3(E)(3), (E)(4). And, the trial court determined that "the dissolution of the 15-year marriage cannot be attributed solely to one of the parties," though it noted the "stresses of [husband's] appeal of the State Department's action in terminating him" contributed to the dissolution of the marriage. See Code § 20-107.3(E)(5). Finally, the trial court applied the Brandenburg formula to derive the parties' respective interests in the marital estate. See Code § 20-107.3(E)(6); see also Keeling v. Keeling, 47 Va. App. 484, 493, 624 S.E.2d 687, 691 (2006).

The evidence in the record adequately supports the trial court's factual findings. Further, because the trial court clearly considered the factors in Code § 20-107.3, the trial court did not abuse its discretion in awarding wife a lump sum award of $77,000 in addition to 50% of the marital equity in the residence.

D.

ATTORNEY'S FEES

Wife asks this Court to award her attorney's fees and costs incurred on appeal. We deny the request. When determining the "propriety of an award of attorney's fees for efforts expended on appeal," we "view the record in its entirety and determine whether the appeal is frivolous or

whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

While husband ultimately has not prevailed on appeal, we cannot say, after having reviewed and considered the entire record in this case, his position was so unreasonable as to entitle wife to an award of attorney's fees and costs incurred in this appeal. Accordingly, "[w]e find the litigation addressed appropriate and substantial issues and that [husband did not] generate[] unnecessary delay or expense in pursuit of [his] interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, the request for an award of fees and costs on appeal is denied.

III.

For these reasons, we hold that wife met her burden of tracing the settlement proceeds into husband's separate account; the trial court properly classified the earnest money and down payment contributions as wife's separate property and marital property respectively; and the trial court did not abuse its discretion in relying on the statutory factors enunciated in Code § 20-107.3(E). Further, because husband has presented judiciable issues on appeal, we decline to award wife attorney's fees. Accordingly, we affirm the trial court's findings.

Affirmed.