COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Beales and Senior Judge Bumgardner
Argued at Alexandria, Virginia


MANHAL MOGRABI

                                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1518-11-4                     JUDGE RANDOLPH A. BEALES
                                                                    MAY 15, 2012

MANAL ABDELLATIF


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
R. Terrence Ney, Judge

Emilia Castillo (Mercado & Castillo, PLLC, on brief), for appellant.

Kathryn D. Bigus (Tate Bywater & Fuller, PLC, on brief), for
appellee.


Manhal Mograbi (husband) appeals the final divorce decree entered by the trial court,

raising several issues concerning the trial court's award of equitable distribution, spousal

support, and attorney's fees in the favor of Manal Abdellatif (wife).  For the following reasons,

we affirm in part, reverse in part, and remand the matter to the trial court for further proceedings

consistent with this opinion.

I. BACKGROUND[1]

The parties were married in Fairfax County in June 1996, and four children were born

during the marriage.  Husband owned a travel agency, and wife was a stay-at-home mother.

Except for a period from 2004-2007 when they relocated to the Kingdom of Jordan, the parties

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On appeal, we consider the evidence in the light most favorable to wife, who was the
prevailing party in the trial court, and grant to wife the benefit of any reasonable inferences
flowing from the evidence.  Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 834
(2003).

resided in Northern Virginia – first in the Annandale area of Fairfax County (the Annandale home) and then, following their return from Jordan, in the Dunn Loring area of Fairfax County (the Dunn Loring home).[2]

At the divorce trial, wife did not dispute that husband purchased the Annandale home prior to the parties' marriage for approximately $112,000. However, wife asserted that the mortgage for the Annandale home was still being paid after the parties were married and that the value of the Annandale home increased greatly during the marriage due to her own personal efforts and through the use of marital funds. Wife testified that, among other improvements to the Annandale home, she laid tile and helped build two decks and a sun room. Wife's testimony was corroborated by Muwaffaq Alradaideh, the parties' building contractor, who actually saw wife performing some of this work. Alradaideh testified that wife's efforts "[a]bsolutely" increased the value of the Annandale home by approximately $10,000. In addition, the parties hired Alradaideh to build an addition to the Annandale home, which was paid for using marital funds. According to Alradaideh, this addition increased the value of the Annandale home by another $40,000 to $45,000. The Annandale home was sold for $365,000 in 2004, and the proceeds were deposited into the parties' joint bank account, where the profits from husband's business were also deposited.

In 2004, the parties and their children relocated to Jordan and resided in a house in Sweilah, a suburb of Amman. Wife testified that husband purchased this home (the Jordanian home) during the marriage, in preparation for the parties' move to Jordan. Wife's testimony was

---

[2] Wife (and the children) left the Dunn Loring home in July 2010, resided temporarily at a women's shelter, and obtained a protective order from the juvenile and domestic relations (JDR) district court later that month granting her possession of the Dunn Loring home. Husband appealed the JDR court's order to the circuit court, which granted wife the same relief in its own protective order. Wife then sought a divorce from bed and board in September 2010, on the grounds of cruelty and reasonable apprehension of bodily harm, and the trial court granted her a divorce on this basis.

corroborated both by Alradeideh and by wife's cousin, Isaac Abdellatif, to whom husband acknowledged owning the Jordanian home. According to Alradeidah, husband told him that, "when he sold the house in Annandale and sen[t] his family to Jordan," husband acknowledged "that he purchased a house in Jordan next to the King's palace" and that husband mentioned paying "a lot of money for that." In addition, over husband's objection, the trial court admitted three Jordanian documents (and their English language translations) that wife offered as further evidence that husband had owned and sold the Jordanian home.[3]

After the parties returned to the United States, they eventually moved into the Dunn Loring home. The property for the Dunn Loring home had been purchased in part from the proceeds of the sale of the Annandale home. Alradeidah was then hired to demolish the existing house sitting on this property and then to build a new, much larger home. Wife and Alradeidah both testified that many of wife's ideas for the design of the Dunn Loring home were incorporated into the finished product.

The trial judge awarded wife an equal share in the equity of the Dunn Loring home, finding that this home was marital property. The trial court found that any tracing of husband's original separate interest in the Annandale home "absolutely cannot be done with regard to the Dunn Loring" home. The trial court also found that husband purchased the Jordanian home during the marriage, that the Jordanian home was marital property, and that wife was entitled to

---

[3] On the first day of the divorce trial, husband specifically denied that the family ever lived in Sweilah. Husband claimed instead that the family lived in Khalda, about three miles away from Sweilah. Husband denied ever owning a home in Jordan or ever seeing the Jordanian documents that wife introduced. On the second day of trial, husband apparently contradicted his testimony from the day before, acknowledging that his family *actually had* lived in the very same house identified by wife the previous day – i.e., in Sweilah, not Khalda. Husband again denied ever owning the Jordanian home in Sweilah, claiming that it was owned by someone else. Husband attempted to introduce a document identifying who he claimed to be the "true owner" of the Jordanian home, but the trial court sustained wife's objection to the introduction of this evidence because the document was not on the exhibit list. Husband has not appealed this evidentiary ruling.

an equal share of the sale price of the Jordanian home, which the trial court found was 625,000 Jordanian dinars.

Furthermore, the trial court awarded wife spousal support, as he noted from the bench, "based upon the calculations and the estimation of [husband's and wife's] income submitted" by wife's counsel. The trial court rejected husband's claim that he was earning essentially no income from his travel agency by the time of the divorce. Instead, after reviewing husband's bank account activity from several years prior to the divorce litigation, the trial court found that "there were vast transfers of cash coming in and going out that remain, especially for 2009, absolutely unexplained" by husband. Adopting the calculations from wife's combined support worksheet, the trial court imputed $7,667 in monthly income to husband and used this figure as a basis for the spousal support award to wife. Neither the transcript of the divorce trial nor the trial court's final decree of divorce reflects that the trial court mentioned or expressly considered the spousal support factors stated in Code § 20-107.1(E) that must be considered as part of any award of spousal support in a contested case.

The trial court awarded wife attorney's fees "for the prosecution of this litigation . . . cumulative from the time of the protective orders" that wife sought in the JDR and circuit courts.

II. ANALYSIS

A. ISSUES RELATING TO EQUITABLE DISTRIBUTION

Among the requirements of the equitable distribution statute, Code § 20-107.3, a trial court shall "determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital" property. Code § 20-107.3(A). Thus, Code § 20-107.3 "'mandates' that trial courts determine the ownership and value of all real and personal property of the parties." Bowers v.

- 4 -

Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges v. Hodges, 2 Va. App. 508, 516, 347 S.E.2d 134, 139 (1986)).

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). Accordingly, "decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence." McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); see Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990). Moreover, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).

Jordanian Home

In his first assignment of error, husband argues that the trial court erred when it admitted the following three Jordanian documents (and their English language translations): (1) a "Title Deed of Immovable Properties" identifying the Jordanian home in Sweilah and indicating that husband was its owner; (2) an assessor's report describing and valuing this property; and (3) a "Vending Contract" indicating that husband sold the property for a sum certain. The trial court

admitted these Jordanian documents under Code §§ 8.01-389[4] and 8.01-390.[5] Husband contends that the trial court erred when it admitted the Jordanian documents under Code §§ 8.01-389 and 8.01-390 because he claims that the Jordanian documents are categorically inadmissible under both of these statutes and because he claims that the documents were not properly authenticated as required by these statutes.

For purposes of this appeal, we will assume without deciding that the trial court erred when it admitted the three Jordanian documents offered by wife under Code §§ 8.01-389 and 8.01-390. However, even assuming without deciding that the trial court erred in this way, the trial court's order of equitable distribution pertaining to this property nevertheless was supported by other credible evidence in the record on appeal.

Viewing the evidence in the light most favorable to wife, who prevailed in the trial court, the record on appeal establishes that husband purchased the Jordanian home during the marriage and that he sold it for 625,000 Jordanian dinars.[6] Ample testimony in the record also established

---

[4] The relevant portions of Code § 8.01-389 state that the "records of any judicial proceeding and any other official record of any court of another state or country, or of the United States, shall be received as prima facie evidence provided that such records are authenticated by the clerk of the court where preserved to be a true record," Code § 8.01-389(A1), and that "recitals of any fact in a deed or deed of trust of record conveying any interest in real property shall be prima facie evidence of that fact," Code § 8.01-389(C).

[5] Code § 8.01-390, states, in relevant part,

> Copies of records of this Commonwealth, of another state, of the United States, of another country, or of any political subdivision or agency of the same, other than those located in a clerk's office of a court, shall be received as prima facie evidence provided that such copies are authenticated to be true copies either by the custodian thereof or by the person to whom the custodian reports, if they are different.

Code § 8.01-390(A).

[6] When wife testified that husband sold the Jordanian home for 625,000 Jordanian dinars, husband's counsel objected on the basis that wife was "testifying from what the document [i.e.,

the conversion rate for converting Jordanian dinars to American dollars – which husband has not challenged on appeal. Therefore, evidence within the record on appeal proved that the Jordanian home was marital property[7] and provided a basis from which the trial court could value this property in American dollars. On this record, we find no basis for concluding that the trial court's order distributing the proceeds from the sale of the Jordanian home constituted an abuse of discretion under Code § 20-107.3. Accordingly, we will not disturb the trial court's equitable distribution award pertaining to this property.

### Dunn Loring Home

In his second assignment of error, husband argues that the trial court committed reversible error when it found that the Dunn Loring home was marital property and awarded wife an equal marital share in the equity of the Dunn Loring home. Husband contends that the trial court failed to consider that he purchased the Annandale home (the predecessor to the Dunn Loring home) prior to the marriage and that the proceeds from the sale of the Annandale home were used to purchase the land on which the Dunn Loring home subsequently was built. However, the trial court's conclusion that husband failed to trace any specific separate interest in the Dunn Loring home was supported by credible evidence in the record.

"Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it."

---

the vending contract] says," which the trial court interpreted as a further objection to the admissibility of the Jordanian documents. Husband never actually moved to strike wife's testimony, "thereby rendering it part of the record for purposes of appeal." M.G. v. Albemarle County Dep't of Soc. Servs., 41 Va. App. 170, 189 n.10, 583 S.E.2d 761, 770 n.10 (2003).

[7] Although husband denied any ownership of the Jordanian home at all, husband's counsel argued in the trial court that the Jordanian home was husband's separate property because it was a gift from his family. The trial court's finding that husband failed to satisfy the burden of establishing that the Jordanian home was a gift was not plainly wrong or unsupported by the evidence.

- 7 -

Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005). In this case, the Dunn Loring home was presumptively marital property because it was acquired during the marriage. See Code § 20-107.3(A)(2)(iii) (defining marital property as "all other property acquired by each party during the marriage which is not separate property"). Therefore, it was husband's burden in the trial court to show that the Dunn Loring home was acquired "in exchange for or from the proceeds of sale of separate property, *provided that such property acquired during the marriage is maintained as separate property.*" Code § 20-107.3(A)(1)(iii) (emphasis added).

> When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(e).

> In other words, if a party "chooses to commingle marital and non-marital funds to the point that direct tracing is impossible," the claimed separate property loses its separate status. Melrod v. Melrod, 83 Md. App. 180, 574 A.2d 1, 5 (Md. [Ct. Spec.] App. 1990). Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the "unknown amount contributed from the separate source transmutes by commingling and becomes marital property." Brett R. Turner, Equitable Distribution of Property 268 (1994).

Rahbaran v. Rahbaran, 26 Va. App. 195, 208-09, 494 S.E.2d 135, 141 (1997). "Whether a transmuted asset can be traced back to [its original] property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of the transmutation." von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997).

Here, it is undisputed that husband purchased the Annandale home prior to the marriage for approximately $112,000. However, there was still an outstanding mortgage on the home when the parties married – and there is no evidence that the mortgage was paid during the

marriage with anything other than marital funds. Significant improvements were then made to the Annandale home using marital funds, greatly increasing its value. According to Alradeidah, the addition that he built increased the value of the Annandale home by $40,000 to $45,000. In addition, Alradeidah testified that wife's own personal efforts in the renovation of the Annandale home "[a]bsolutely" increased its value by another $10,000. Thus, the use of marital funds and wife's personal efforts certainly contributed to a significant increase in the Annandale home's value. See Code § 20-107.3(A)(1). The trial court reasonably rejected husband's claim at trial that the increase in the value of the Annandale home resulted *only* from changes in the real estate market (and not from any improvements through the use of marital funds or wife's personal efforts).

In 2004, eight years after the parties married, the Annandale home was sold for $365,000. The proceeds from the sale of the Annandale home were deposited into the parties' joint bank account, where they were commingled with other marital funds. The purchase and construction of the Dunn Loring home then proceeded in several phases. First, the land on which the Dunn Loring home was eventually built was purchased using funds from the joint bank account (including the proceeds from the sale of the Annandale home). Next, Alradeidah was paid to demolish the structure that existed when this property was purchased. Finally, Alradeidah was paid to build a new structure on the Dunn Loring property, which included wife's ideas for the design of the home. Husband claimed that the construction of the Dunn Loring home was funded by investments from husband's extended family that were gifts to husband. However, the trial court rejected this claim, finding that husband's evidence supporting this claim lacked credibility.

In light of all of these circumstances, the trial court (acting as factfinder) was not plainly wrong when it found that husband "absolutely cannot" show "a distinct discrete identification"

of any separate interest in the Dunn Loring home. Thus, the trial court did not err when it found that husband failed to satisfy his burden of tracing any identifiable separate interest in the equity in the Dunn Loring home that remained from his original separate interest in the Annandale home – before that home was greatly improved during the marriage and then sold. See Code § 20-107.3(A)(3)(e); von Raab, 26 Va. App. at 248, 494 S.E.2d at 160. Accordingly, the trial court's classification of the Dunn Loring home as marital property was neither plainly wrong nor without evidence to support it, and, therefore, that classification will not be reversed on appeal. Ranney, 45 Va. App. at 32, 608 S.E.2d at 492.

B. ISSUES RELATING TO SPOUSAL SUPPORT

This Court will not reverse a trial court's decision concerning spousal support except when "its decision is plainly wrong or without evidence to support it." Northcutt v. Northcutt, 39 Va. App. 192, 196, 571 S.E.2d 912, 914 (2002). This established standard of review on appeal reflects that "[a] circuit court has 'broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion.'" Fadness v. Fadness, 52 Va. App. 833, 845, 667 S.E.2d 857, 863 (2008) (quoting Brooks v. Brooks, 27 Va. App. 314, 317, 498 S.E.2d 461, 463 (1998)).

Husband presents two assignments of error challenging the trial court's order of spousal support to wife. In his third assignment of error, husband contends that the trial court abused its discretion when it imputed income to him. In his fourth assignment of error, husband contends that the trial court erred as a matter of law when it based the spousal support award on the calculations in wife's combined support worksheet – without expressly considering the spousal support factors provided in Code § 20-107.1(E). We conclude that the matter must be remanded to the trial court for a new spousal support hearing because the record on appeal does not include any written findings addressing the Code § 20-107.1(E) spousal support factors, as required by

- 10 -

Code § 20-107.1(F) and by this Court's opinion in Robinson v. Robinson, 50 Va. App. 189, 648 S.E.2d 314 (2007). Therefore, we do not address the trial court's imputation of income to husband in this opinion.[8]

Code § 20-107.1(F) states, in pertinent part, "In contested cases in the circuit courts, any order granting, reserving or denying a request for spousal support *shall be accompanied by written findings and conclusions of the court identifying the factors in subsection E* which support the court's order." (Emphasis added). Prior to the 1998 enactment of Code § 20-107.1(F), this Court had held that, "when a trial court failed to make factual findings or present any explanation of the circumstances that influenced its decision regarding spousal support, we could examine the record to determine if the trial court's decision was supported by evidence relevant to the statutory factors." Robinson, 50 Va. App. at 195, 648 S.E.2d at 317 (citing Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 427 (1986)). However, this Court explained in Robinson that the Court's prior method of analysis has been "superseded by the enactment of Code § 20-107.1(F)" – and that Code § 20-107.1, as amended, now clearly "does not contain a provision permitting such review." Id. "On the contrary, Code § 20-107.1(F) specifically requires that in a contested case, the trial court shall provide written findings and conclusions identifying the statutory factors that support the court's ruling on a request for spousal support." Id.

"The written explanation requirement can be satisfied by trial court orders, written letter opinions filed in the court's record, oral rulings from the bench recorded in a written transcript, as well as findings and conclusions recorded in a statement of facts in lieu of a transcript

---

[8] Therefore, upon remand, among the issues that may be considered by the trial court is whether income should be imputed given the circumstances in the existing record, including any evidence of recent earned income by the parties and any evidence of being voluntarily unemployed or underemployed. See Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 783 (1999) ("In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed.").

pursuant to Rule 5A:8(c)." Pilati v. Pilati, 59 Va. App. 176, 182, 717 S.E.2d 807, 810 (2011) (internal quotation marks and citation omitted). Regardless of the particular form of the written explanation, however, "to comply with Code § 20-107.1(F), the trial court should identify all relevant statutory factors supporting its decision and provide an explanation of its resolution of any significant underlying factual disputes." Id.; see also Benzine v. Benzine, 52 Va. App. 256, 261, 663 S.E.2d 105, 108 (2008) ("It is the trial court's thought process and consideration of the Code § 20-107.1(E) factors related to its spousal support decision in contested cases that the legislature has determined must be reflected in its order.").

Wife notes that the trial court specifically considered the equitable distribution factors listed in Code § 20-107.3 when it made its findings concerning equitable distribution and that some of the equitable distribution factors and the spousal support factors listed in Code § 20-107.1(E) are the same. However, the trial court's thorough consideration of the eleven equitable distribution factors does not necessarily mean that the thirteen spousal support factors of Code § 20-107.1(E) were duly considered in this case. Even the factors that are the same under both equitable distribution and spousal support might be weighed differently with the other factors considered in making a spousal support award than they were in making an equitable distribution award. Moreover, Code § 20-107.1(F) specifically requires that a spousal support order "shall be accompanied by written findings and conclusions of the court *identifying the factors in subsection E* which support the court's order." (Emphasis added).

"[W]here a trial court is required to make written findings supporting its decision, its failure to do so constitutes reversible error." Robinson. 50 Va. App. at 194, 648 S.E.2d at 316. The record on appeal here does not include any written "findings or conclusions identifying the factors listed in Code § 20-107.1(E) that support the spousal support award." Id. at 196, 648 S.E.2d at 317. Accordingly, on this basis, "we reverse the spousal support award and remand the

case to the trial court for reconsideration of the award based upon the existing record and in keeping with this opinion." Id.

## C. Issues Relating to Attorney's Fees

"'[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'" Richardson v. Richardson, 30 Va. App. 341, 351, 516 S.E.2d 726, 731 (1999) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)). "[T]he key to a proper award of counsel fees [is] reasonableness under all of the circumstances revealed by the record." McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).

### Award of Attorney's Fees for Wife's Legal Costs of Obtaining the Protective Orders

In his fifth assignment of error, husband argues that the trial court abused its discretion when it awarded wife attorney's fees for the legal costs of obtaining protective orders against husband in the JDR court and then in the circuit court. Husband contends that the legal fees incurred while obtaining protective orders cannot be included in an award of attorney's fees in a divorce case because, he claims, a protective order proceeding is not an "ancillary proceeding" for the purpose of divorce cases. See Tyszcenko v. Donatelli, 53 Va. App. 209, 222, 670 S.E.2d 49, 56 (2008) ("Code §§ 20-79(b) and 20-99(5) provide the statutory basis for the broad discretionary authority circuit courts have to award attorney's fees and other costs as the equities of a divorce case and its ancillary proceedings may require.").

Under Rule 5A:18, "[t]he same argument must have been raised, with specificity, at trial before it can be considered on appeal." Correll v. Commonwealth, 42 Va. App. 311, 324, 591 S.E.2d 712, 719 (2004); see Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). Here, husband never made any argument in the trial

court that the protective order proceedings in the JDR and circuit courts were not "ancillary" to the parties' divorce case. This specific argument was not raised at the divorce trial[9] or in husband's written objections to the final divorce decree.[10] Accordingly, appellate consideration of the specific argument raised in husband's fifth assignment of error is barred under Rule 5A:18 because he did not raise this same argument in the trial court.

<u>Evidentiary Basis for the Award of Attorney's Fees to Wife</u>

In his sixth assignment of error, husband argues that the award of attorney's fees to wife was not supported by the record because the trial court did not specifically articulate from the

---

[9] Husband points to a portion of the trial transcript where his counsel contended, "I know of no precedents which allows this Court to award this plaintiff attorneys fees for other proceedings, *especially when she had the opportunity in the other proceedings to present attorney's fees affidavits and get awards at that point.*" (Emphasis added). Husband's argument in the trial court that wife had another avenue for obtaining attorney's fees for a protective order is different than the argument that husband raises in his fifth assignment of error – i.e., that a protective order proceeding is not "ancillary" to a divorce case, as defined by this Court in <u>Tyszcenko</u>. The trial court simply was never asked to address that issue at trial. Thus, husband's stated argument in the trial court is inadequate to preserve his different argument on appeal under Rule 5A:18.

[10] In his written objections to the final divorce decree, husband stated:

> 6. Defendant objects to the imposition of attorneys' fees for the Protective Order matter handled in July of 2010 in the Juvenile and Domestic Relations Court and later appealed to the Circuit Court of Fairfax County. The original courts hearing the Protective Order matters denied an award of attorney's fees.

> 7. Defendant objects to the court's determination that he had two separate protective orders entered against him since the "second order" was based upon the same set of circumstances as the "first" and was issued as a result of the appeal of the first order.

Thus, husband's written objections did not contain any hint of the argument on appeal that attorney's fees could not be awarded for the legal costs of obtaining the protective orders because a protective order proceeding is not "ancillary" to a divorce case.

- 14 -

bench the amount of attorney's fees to be awarded to wife.[11]  Husband contends that the award

of attorney's fees in the final divorce decree, which was drafted by wife's counsel, reflected

attorney's fees that were never offered into evidence or found as reasonable by the trial court at

the divorce trial.

In its ruling from the bench at the conclusion of the divorce trial, the trial court awarded

attorney's fees to wife "for the prosecution of this litigation . . . cumulative from the time of the

protective orders that were sought in the lower court."  The trial court then directed wife's

counsel to submit a draft final divorce decree that encompassed the trial court's rulings.  The

draft divorce decree – which the trial court reviewed, signed, and entered as the final divorce

decree – included wife's attorney's fees that were reflected in the attorney's fees affidavit

prepared by wife's counsel.  This attorney's fees affidavit was admitted into the trial evidence as

Plaintiff's Exhibit 34.  To the extent that the final divorce decree includes attorney's fees beyond

those listed in the attorney's fees affidavit, it is clear that the final divorce decree also reflected

the attorney's fees incurred by wife for the preparation and entry of the draft final divorce

decree.  The trial court's inclusion of these legal fees in its award of attorney's fees to wife was

reasonable and certainly did not amount to an abuse of the trial court's discretion.

### III. CONCLUSION

We affirm the trial court's equitable distribution rulings and its award of attorney's fees

to wife.  However, we are required under Code § 20-107.1(F) to reverse the trial court's award of

spousal support to wife because the record on appeal contains no written findings or conclusions

---

[11] Husband also includes a seventh assignment of error, which states, "The court erred in allowing Wife's counsel to interlineate dates and amounts in the order not stated in Court and in entering the order without proper notice to Husband or his counsel."  However, husband's brief contains no argument specifically addressing this assignment of error.  See Rule 5A:20(e) (stating that an appellant's opening brief shall contain "the argument (including principles of law and authorities) relating to each assignment of error").  Accordingly, we do not address appellant's seventh assignment of error.

specifically addressing the Code § 20-107.1(E) spousal support factors and applying those factors to the circumstances of this case. Accordingly, we remand the award of spousal support to the trial court for its reconsideration and for any necessary further proceedings consistent with this opinion based upon the existing record.[12]

Affirmed in part,
reversed in part,
and remanded.

---

[12] Wife seeks attorney's fees on appeal. However, "[a]s we are reversing this judgment in part, we cannot say that appellant's appeal is entirely without merit." West v. West, 59 Va. App. 225, 237, 717 S.E.2d 831, 836 (2011). Therefore, we decline to award appellate attorney's fees to wife.